UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
MICHAEL B. HANDRIGAN,            )
                Plaintiff,                       )
                                                    )
v.                                                 )          CIVIL ACTION NO. 04-12491-NMG
                                                    )
TRAVIS & NATALIE, INC.            )
Owner of F/V TRAVIS &             )
& NATALIE,                              )
                Defendants.                   )
_____)

**PLAINTIFF'S SUPPLEMENT TO OPPOSITION OF DEFENDANT'S MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Pursuant to the court's order the plaintiff supplements their opposition to the Defendant's

motion to transfer venue pursuant to 28 U.S.C. §1404(a) as follows:

**I.      INTRODUCTION**

The Defendant argues that the forum chosen by the Plaintiff is inconvenient and,

pursuant to the venue transfer statute, 28 U.S.C. §1404(a), is requesting that venue be transferred

to the District of Rhode Island.  The Defendant's request should be <u>denied</u> on the grounds that

this court not only has personal jurisdiction over the defendant, but this venue and forum are

proper.

The Plaintiff has a right to his choice of venue **and** forum pursuant to the Jones Act as

expanded by 28 U.S.C. §1391(c) and set forth by the Court in <u>Pure Oil</u>, and as a Jones Act

seaman he is *immune* to the constriction of venue that §1440(a) would place upon him and upon

§1391(c).

Even if the "convenience" of litigation in Massachusetts were to be weighed as Defendant requests, Travis & Natalie, Inc.'s contacts with Massachusetts are sufficient so as to permit this court to exercise personal jurisdiction over them making both venue and forum in this district proper.

The Defendant has not met their burden of proving that this venue is inconvenient nor have they demonstrated that considerations of convenience and judicial efficiency strongly favor litigating this case in the proposed alternative forum. Accordingly, Defendant's motion to transfer venue should be DENIED.

II.   **FACTS**

1.  Michael B. Handrigan was a commercial fisherman serving as a member of the crew of the Defendant's vessel, the F/V TRAVIS & NATALIE. *See* Complaint at 1, ¶1 and Defendant's answer at 1, ¶1; both attached as Exhibit A.

2.  The plaintiff has brought a claim under the Jones Act, 46 U.S.C. App. Sec. 688 *See* Complaint at 3, ¶7 and Answer at 1, ¶7.

3.  The Defendant hires its crew from Massachusetts. *See* Deposition of Frederick Joseph Mattera (Captain of the F/V TRAVIS & NATALIE) ("Deposition") at 24, Lines 17-21. All pertinent pages of Frederick Joseph Mattera's Deposition are attached as Exhibit B.

4.  The Defendant purchases supplies from vendors in Massachusetts. *Id*. at 25, Lines 5-14.

5.  The Defendant has repair work done in Massachusetts. *Id*. at 26, Lines 1-18.

6.  The Defendant buys fuel in Massachusetts. *Id*. at 27, Lines 14-16.

7.  The Defendant buys ice in Massachusetts. *Id*. at 28, Lines 4-8.

8.  The Defendant sells their product in Massachusetts. *Id*. at 28, Lines 23-25.

2

9.  The Defendant's gross income in 2004, the year that the Plaintiff was injured serving aboard their vessel, was $963,800.  Twenty three percent of this amount, or ($221,674) was earned by conducting business in Massachusetts.  *Id*. at 29-30.

10. For the years 2002 and 2003, twenty three percent and fifty seven percent of the defendant's gross income respectively was earned by conducting business in Massachusetts.  *Id*. at 30-31.

11. The defendant has been conducting business in Massachusetts for a substantial period of time and for a substantial number of dollars paid through Massachusetts banks.  *Id*. at 32.

12. The defendant purchased Massachusetts state permits for fishing, lobster, summer flounder and scup.  *Id*. at 34, Lines 17-21.


III.   **LAW AND ARGUMENT**

A.    Plaintiff's Choice of Venue

Though venue in this matter is proper and remains undisputed, it is so closely related to forum that it bears mention.  The leading case regarding venue under the Jones Act is Pure Oil Co. v. Suarez, 384 U.S. 202 (1966).  Historically, the Jones Act has provided that "[j]urisdiction in [Jones Act] actions shall be under the court of the district in which the defendant employer resides or in which his principle office is located."  Id. at 203.

In Pure Oil, the U.S. Supreme Court expanded venue under the Jones Act to include **"wherever the defendant corporation does business"** by applying the definition of residence set forth by 28 U.S.C. § 1391(c) which states: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the *residence* of such corporation for venue purposes."  28 U.S.C. §

3

1391(c); <u>Pure Oil</u> at 203.  The Court's expansion "broaden[ed] the general venue requirements in actions against corporations by providing a **forum** in any judicial district in which the corporate defendant "is doing business"." <u>Id</u>. at 204.  For its rationale, the Court quotes from <u>Transmirra Prods. Corp. v. Fourco Glass Co.</u>: The rationale of this sharp break with ancient formulae is a response to "a general conviction that it was 'intolerable if the traditional concepts of "residence" and "presence" kept a corporation from being sued wherever it was creating liabilities." <u>Id</u>. at 205.

Because the defendant has derived approximately one-third of its income from conducting business in Massachusetts over the past three years, venue is proper here.  *See* <u>Facts</u> set forth *supra*.

In a Jones Act case, venue overlaps forum in that a Jones Act seaman may sue an employer corporation anywhere they do business.  "Venue" and "forum" are not concepts of where a case "can" versus "should" have been brought as stated by the Defendant in their Supplemental Memorandum of Law.  Instead, it should be noted that "[28 U.S.C. §]1391(c) is [] consistent with the purpose and language of *the Jones Act, whose thrust was not primarily directed at venue, but rather at giving seamen substantive rights and a federal forum for their vindication*." <u>Pure Oil</u> at 205 (emphasis added).


B.    <u>Plaintiff's Choice of Forum</u>

1.    <u>Forum Non Conveniens</u>

Historically, under <u>Gulf Oil Corp. v. Gilbert</u> and the federal doctrine of forum non conveniens, it was permissible to dismiss an action where it had been determined that the forum

had so little to do with the parties or the dispute at hand that the forum hindered the litigation. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 512 (1946).

"Such a dismissal would be improper today because of the federal venue transfer statute, 28 U.S.C. §1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  By this statute, "district courts were given more discretion to transfer . . . than they had to dismiss on grounds of forum non conveniens."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).  As a consequence, the federal doctrine of forum non conveniens has continuing application only in cases where the alternative forum is abroad."  American Dredging Co. v. Miller, 510 U.S. 443, 449 (1994) (*superseding* Gilbert by statute).


2.     Forum Non Conveniens and the Jones Act

The U.S. Supreme Court has repeatedly commented upon the unavailability of forum non conveniens as a basis for dismissal of cases filed under the Federal Employers' Liability Act ["FELA"].  Zipfel v. Halliburton Co., 832 F.2d 1477, 1487 (9th Cir. 1987).  The Jones Act incorporates the FELA pursuant to 46 U.S.C. §688(a), and, both the Jones Act and the FELA have specific venue provisions which separate them from statutes aimed at general venue – like §1404(a):

FELA: Under this chapter an action may be brought in a district court of the United States, in the district court of the residence of the defendant, or in which the cause of action arose, *or in which the defendant shall be doing business at the time of commencing the action*.  Id. (emphasis added).

5

The Jones Act, as modified by 28 U.S.C. §1391(c), provides: A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or *is doing business*, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Regarding "cases under the [FELA] [the U.S. Supreme Court] has held that plaintiff's choice of a forum cannot be defeated on the basis of forum non conveniens." Gilbert at 505 *citing* Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44 (1941).  In Kepner, the Court stated that the "privilege of venue, granted by the legislative body which created this right of action [under the FELA], cannot be frustrated for reasons of convenience or expense." Kepner at 54." Zipfel v. Halliburton Co., 832 F.2d 1477, 1487 (9th Cir. 1987).

Therefore, forum non conveniens does not apply to Jones Act cases brought in Federal District Court and neither does §1404 since application of §1404 runs contrary to and would frustrate the scope and intent of §1391(c) and, ultimately, the Jones Act seaman's right to his choice of forum.  §1404 seeks to constrict general venue based upon the convenience of the defendant where §1391(c) seeks to liberate the Jones Act seaman's choice of specific forum and venue.


C.    The §1404(a) Venue Transfer Standard

If this were not a Jones Act case and if §1404 were applied to this forum dispute, the Defendant would have a heavy burden to overcome in justifying the transfer of a case for the sake of a claimed convenience.  "[T]here is a *strong* presumption in favor of a plaintiff's forum choice, the defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency *strongly* favor

litigating the claim in the alternative forum … [The doctrine] is used to avoid 'serious unfairness' and … plaintiff's choice of forum will be disturbed only rarely." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996) *citing* Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992) (emphasis added); ScanSoft, Inc. v. Smart, 2003 U.S. Dist. LEXIS 23636, 9 (D.Mass. 2003). "Application of the doctrine is committed to the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of discretion." Mercier, at 1349.

"[W]here, as here, there are only two parties to a dispute, the plaintiff should not be deprived of his choice of forum "except upon a clear showing of facts which either (1) establish such **oppressiveness and vexation** to a defendant as to be **out of all proportion to plaintiff's convenience,** which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum **inappropriate** because of considerations affecting the court's own administrative or legal problems." Id. *citing* Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 720 (1st Cir. 1996) *quoting* Koster v. (American) Lumbermens' Mut. Cas. Co., 330 U.S. 518, 524 (1947).

1.    Defendant has Failed to Establish "Oppressiveness and Vexation"

Massachusetts is not inconvenient to this litigation. As stated in the facts *supra*, the Defendant has been conducting a substantial amount of business in Massachusetts and has not as of yet found its business forays into the Commonwealth, or the profits gathered thereby, to be inconvenient. It is not "oppressive", nor is it a hardship, to travel from Providence to Boston in order to appear for a civil trial. In fact, many citizens of Rhode Island make a similar commute daily and without "vexation."

7

The Defendant cites to <u>Wilson v. Ohio River Co.</u>, 211 F.Supp. 666 (W.D. Pa. 1962) in their argument that "[T]he convenience to the plaintiff's attorney in maintaining the action in Boston is not a permissible factor under §1404(a)." It is not the pleasure of the plaintiff's attorney that has selected the venue and forum of this litigation but the pleasure of the plaintiff himself in balancing the most experienced counsel he can find with the proper venue and forum. Plaintiff's counsel has been practicing admiralty and maritime law for more than 53 years.

Further, the <u>Wilson</u> court quotes the U.S. Supreme Court-approved opinion of the 3rd Circuit's late Judge Goodrich who stated that "[t]he statute (§1404(a)) limits the privilege of the plaintiff to have his lawsuit tried in the forum of his choosing if he can there get jurisdiction over the defendant." <u>Wilson</u> at 667. This court has both subject matter jurisdiction and personal jurisdiction over the defendant – neither of which has been contested. Since this court *does* have jurisdiction over the defendant, the <u>Wilson</u> case supports the plaintiff's position that this court is the proper venue and forum for this litigation.

Defendant's counsel is no stranger to this court. Upon information and belief he is not only a respected and outstanding member of the Massachusetts Bar but also currently has two cases pending in this very district and has averaged taking two case a year in this district. *See* PACER Output attached as Exhibit C.

The Defendant corporation is also no stranger to Massachusetts or to paying the cost of transportation to and from the Commonwealth during the course of its regular business with various corporations in this state. The drive to Boston, *arguendo*, costs less in fuel and parking than defendant's usual manner of maritime travel. Therefore, the defendant cannot now claim that such easier and less costly travel is an unreasonable burden simply because the matter at issue is litigation.

8

According to Mapquest, the drive from Narragansett, RI, the home port of Travis & Natalie, Inc., to Fairhaven, MA, the location of one of the Plaintiff's Massachusetts vendors, is approximately 45 miles and may be driven in 1 hour and 13 minutes.  *See* Affidavit of Frederick J. Mattera attached as Exhibit D; Deposition at 26, Lines 12-18; MapQuest result attached as Exhibit E.  The drive from Narragansett, RI to One Courthouse Way in Boston is 34 miles more and only adds 20 minutes more drive time.  *See* MapQuest result attached as Exhibit F.

With the advancement of communications and digital technologies, the Doctrine of Forum Non Conveniens is gradually becoming a dying concept.  Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991).  Where most pleadings are being done electronically and even depositions may be done by vide conferencing, the days of the doctrine and §1404 are likely numbered.

In the course of the instant litigation all pleadings and written discovery shall occur electronically or by post and, if the Defendant is correct as to where the witnesses and persons of interest are to be found (potentially as many as 21), such depositions shall be conducted in Rhode Island.  *See* Deposition  at 45-47.  Therefore, over the course of this litigation Plaintiff's counsel shall be required to visit Rhode Island far more often than the Defendant shall have to come to Boston making the Plaintiff's "convenience" "nonexistent."

The burden of obtaining witnesses and relevant documents is likely to be about equal, the vessel may be videotaped if necessary, and, though the Defendant may feel that litigation in Massachusetts is inconvenient, this is not the type of "oppressiveness and vexation" disproportionate to Plaintiff's "convenience" of litigating in a district within which the Defendant corporation conduct regular and substantial business.

2.    <u>Trial in Massachusetts is not Inappropriate</u>

The Commonwealth of Massachusetts has a vested interest in hearing this case in that Defendant has 'purposefully avail[ed] [themselves] of the privilege of conducting activities within [Massachusetts], thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  As such, they should reasonably anticipate being haled into a Massachusetts court.  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

**IV.    <u>CONCLUSION</u>**

The Defendant's request to transfer venue should be <u>denied</u> on the grounds that this court not only has personal jurisdiction over the defendant, but this venue and forum are proper.

The Plaintiff has a right to his choice of venue **and** forum pursuant to the Jones Act as expanded by 28 U.S.C. §1391(c) and set forth by the Court in <u>Pure Oil</u>, but as a Jones Act seaman he is *immune* to the constriction of venue that §1440(a) would place upon him and upon §1391(c).

Even if the "convenience" of litigation in Massachusetts were to be weighed as Defendant requests, Travis & Natalie, Inc.'s contacts with Massachusetts are sufficient so as to permit this court to exercise personal jurisdiction over them making both venue and forum in this district proper.

The Defendant has not met their burden of proving that this venue is inconvenient nor have they demonstrated that considerations of convenience and judicial efficiency strongly favor litigating this case in the proposed alternative forum.  Accordingly, Defendant's motion to transfer venue should be DENIED.

WHEREFORE, the plaintiff requests that the Defendant's Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a) be DENIED.

Respectfully submitted,
by his attorney,

/s/ David B. Kaplan
DAVID B. KAPLAN, ESQUIRE
BBO # 258540
THE KAPLAN/BOND GROUP
88 BLACK FALCON AVENUE, SUITE 301
BOSTON, MA 02210
(617) 261-0080

Dated:  June 15, 2005

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. NO.: _____

```
* * * * * * * * * * * * * * * * * * * * * * * *
MICHAEL B. HANDRIGAN,                         *
        Plaintiff,                            *
                                              *
v.                                            *        COMPLAINT
                                              *
TRAVIS & NATALIE, INC.,                       *
Owner of F/V TRAVIS & NATALIE,                *
        Defendants.                           *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## THE PARTIES

1.    The plaintiff, Michael B. Handrigan, is an individual who resides in Narragansett, Rhode Island and at all times hereinafter referred to, was a commercial fisherman, serving as a member of the crew of the F/V TRAVIS & NATALIE.

2.    The defendant, Travis & Natalie, Inc., owner of F/V TRAVIS & NATALIE, a duly organized corporation existing under the laws of the State of Rhode Island, and doing business in the Commonwealth of Massachusetts, and at all times hereinafter referred to, owned, operated and controlled the F/V TRAVIS & NATALIE and employed the plaintiff, Michael Handrigan.

## JURISDICTION

This is a case of maritime jurisdiction pursuant to 28 U.S.C. 1333(1).

## FACTUAL ALLEGATIONS

3.    On or about May 4, 2004, the plaintiff was in the employ of the defendant as a seaman and member of the crew of the F/V TRAVIS & NATALIE. While

the F/V TRAVIS & NATALIE was in navigable waters and while the plaintiff

was in the exercise of due care and in the performance of his duties, he sustained

severe and painful personal injuries.

## COUNT I
### (Jones Act)

4.    Paragraphs 1-3 are realleged and incorporated herein.

5.    The injuries sustained by the plaintiff were not caused by any fault on his

part, but were caused by the fault of the defendant, its agents, or servants, as

follows:

> a)    Failure to use due care to provide
>        and maintain a seaworthy vessel with
>        safe and proper appliances;
>
> b)    Failure to use due care to make
>        reasonable and periodic inspection
>        of said vessel, its equipment and
>        appliances;
>
> c)    Failure to use due care to furnish
>        the plaintiff with a reasonably
>        safe place in which to perform his
>        work;
>
> d)    Failure and negligence of fellow
>        employees;
>
> e)    Failure and negligence in other
>        respects that will be shown at the
>        trial.

6.    As a result of the said injuries, the plaintiff has suffered great pain of body

and anguish of mind, lost a great deal of time from his usual work, incurred

medical and hospital expenses, and has suffered and will suffer other damages as

will be shown at the trial.

2

7.    This cause of action is brought under the Merchant Marine Act of 1920, commonly called the Jones Act.

### REQUEST FOR RELIEF

1.    Under Count I, that this court enters judgment in favor of the plaintiff against the defendant.

2.    For such other relief as this court deems appropriate.

### COUNT II
### General Maritime Law
### (Unseaworthiness)

8.    Paragraphs 1-7 are realleged and incorporated herein.

9.    The injuries sustained by the plaintiff were due to no fault of his, but were caused by the unseaworthiness of the defendant's vessel, its appliances, appurtenances, and/or equipment.

10.    As a result of the said injuries, plaintiff has suffered great pain of body and anguish of mind, lost a great deal of time from his usual work, incurred medical and hospital expenses, and has suffered and will continue to suffer other damages as will be shown at trial.

11.    This cause of action is brought under the General Maritime Law based upon unseaworthiness and is for the same cause of action as Count I.

### REQUEST FOR RELIEF

1.    Under Count II, that this court enter judgment in favor of the plaintiff against the defendant.

2.    For such other relief as this court deems appropriate.

3

## COUNT III
### (Maintenance and Cure)

12.    Paragraphs 1-11 are realleged and incorporated herein.

13.    As a result of his injuries, the plaintiff incurred expenses for his maintenance and cure and will continue to do so all to his damage.

### REQUEST FOR RELIEF

1.    Under Count III, that this court enter judgment in favor of the plaintiff against the defendant.

2.    For such other relief as this court deems appropriate.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted
by his attorney,

DAVID B. KAPLAN #258540
The Kaplan/Bond Group
88 Black Falcon Avenue, Suite 301
Boston, MA  02210
(617) 261-0080

Dated: 11/22/04

4

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
MICHAEL B. HANDRIGAN,                 *
        Plaintiff,                    *
                                      *
v.                                    *         C.A. NO.: _____
                                      *
TRAVIS & NATALIE, INC.,               *
Owner of F/V TRAVIS & NATALIE,        *
        Defendant.                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

### SEAMAN'S AFFIDAVIT

I, DAVID B. KAPLAN, Attorney for the plaintiff in the above-entitled action, on oath depose and state as follows:

The plaintiff in the above-entitled action is a seaman and claims the benefits of the United States Code Annotated, Title 28, Section 1916, which states that:

> In all courts of the United States,
> seaman may institute and prosecute
> suits and appeals in their own names
> and for their own benefit for wages
> or salvage or the enforcement of laws
> enacted for their health or safety
> without prepaying fees or costs or
> furnishing security therefor.

Respectfully submitted
by his attorney,

DAVID B. KAPLAN #258540
The Kaplan/Bond Group
88 Black Falcon Avenue, Suite 301
Boston, MA  02210
(617) 261-0080

Dated: November 22, 2004

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MICHAEL B. HANDRIGAN

## DEFENDANTS

TRAVIS & NATALIE, INC., owner of
F/V TRAVIS & NATALIE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David B. Kaplan, Esquire   (617) 261-0080
THE KAPLAN/BOND GROUP
88 Black Falcon Avenue, Suite 301
Boston, MA  02210

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government
        Plaintiff

☐ 2  U.S. Government
        Defendant

☐ 3  Federal Question
        (U.S. Government Not a Party)

☐ 4  Diversity
        (Indicate Citizenship of Parties
        in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                                AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | **PERSONAL INJURY** ☐ 362 Personal Injury — Med. Malpractice | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 365 Personal Injury — Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 368 Asbestos Personal Injury Product Liability | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☒ 340 Marine | | **LABOR** | **SOCIAL SECURITY** |
| ☐ 190 Other Contract | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| | | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      another district
      (specify)

☐ 6 Multidistrict
      Litigation

☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Maritime personal injury    jurisdiction based on 28 U.S.C. 1333 (1)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE    None

DOCKET NUMBER

DATE

November 22, 2004

SIGNATURE OF ATTORNEY OF RECORD

*David B. Kaplan*

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)   MICHAEL B. HANDRIGAN  v.
TRAVIS & NATALIE, INC., owner of F/V TRAVIS & NATALIE

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

___   I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

 X    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

___   V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 40.1(G)).  IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?
                                                            YES        (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?   (SEE 28 USC §2403)
                                                            YES        (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                       (NO)

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?
                                                            YES        (NO)

7. DO ALL OF THE PARTIES  IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"),  RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                            YES        (NO)

        A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

             EASTERN DIVISION              CENTRAL DIVISION              WESTERN DIVISION

        B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
             GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

             (EASTERN DIVISION)            CENTRAL DIVISION              WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____ DAVID B. KAPLAN, ESQUIRE
ADDRESS _____ THE KAPLAN/BOND GROUP, 88 Black Falcon Avenue, St. 301
               Boston, MA  02210
TELEPHONE NO. _____ (617) 261-0080

(Cover sheet local.wpd - 11/27/00)

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

—————————————————— DISTRICT OF ———————————————————

SUMMONS IN A CIVIL ACTION

MICHAEL B. HANDRIGAN,

V.                                              CASE NUMBER:

TRAVIS & NATALIE, INC., owner of
F/V TRAVIS & NATALIE

TO: (Name and Address of Defendant)

> Travis & Natalie, Inc.
> 113 Lewiston Avenue
> West Kingston, RI  02892

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

> David B. Kaplan, Esquire
> THE KAPLAN/BOND GROUP
> 88 Black Falcon Avenue, Suite 301
> Boston, MA  02210
>
> (617) 261-0080

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

CLERK                                           DATE

BY DEPUTY CLERK

JRO:vc 37168 pleading\37168answer.wpd

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

MICHAEL B. HANDRIGAN,        :
Plaintiff,                          :
                                    :

v.                                 :       C.A. No.: 04-12491
                                    :

TRAVIS & NATALIE, INC.,       :
Owner of F/V TRAVIS & NATALIE,  :
Defendants,                :

## ANSWER OF DEFENDANT

### The Parties

     1. Admit, that at certain times Michael B. Handrigan was an individual who served as a member of the crew of the F/V Travis and Natalie and deny the remaining allegations for lack of specificity.

     2. Admit, that Travis and Natalie, Inc. owned F/V Travis and Natalie and is a Rhode Island Corporation. Deny the remainder of the allegations.

### Jurisdiction

No response is required.

     3. The allegation is denied in several parts; that it is unknown at present whether on May 4, 2004, plaintiff was an employee of the defendant; whether Travis and Natalie was in navigable waters; it is denied that the plaintiff was in the exercise of due care and it is further denied that he sustained severe and painful personal injuries.

### COUNT I

     4. Defenses to paragraphs 1 through 3 are repeated and incorporated by reference.

     5. Denied.

     6. Denied.

     7. Admitted.

## REQUEST FOR RELIEF

1.    That the Court determine that plaintiff is not entitled to the relief sought.

2.    That the Court determine that plaintiff is not entitled to the relief sought.

WHEREFORE, defendant demands judgment against the plaintiff, plus interest, costs and attorneys fees.

## COUNT II

8.  Defenses to paragraphs 1 through 7 are repeated and incorporated by reference.

9.  Denied.

10.  Denied.

11.  Admitted.

## REQUEST FOR RELIEF

1.    That the Court determine that plaintiff is not entitled to the relief sought.

2.    That the Court determine that plaintiff is not entitled to the relief sought.

WHEREFORE, defendant demands judgment against the plaintiff, plus interest, costs and attorneys fees.

## COUNT III

12.  Defenses to paragraphs 1 through 11 are repeated and incorporated by reference.

13.  Denied.

## REQUEST FOR RELIEF

1.    That the Court determine that plaintiff is not entitled to the relief sought.

2.    That the Court determine that plaintiff is not entitled to the relief sought.

WHEREFORE, defendant demands judgment against the plaintiff, plus interest, costs and attorneys fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Defendant affirmatively pleads that if plaintiff was injured when and as described, it was due in whole or in part to the plaintiff's own negligence and failure to exercise his duty of care, skill and knowledge in the performance of his work reasonably required of a seaman of the plaintiff's experience and not due to any negligence, fault or unseaworthy condition on the part of the defendant or any person for whom defendant may be legally responsible.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

### SECOND DEFENSE

Defendant affirmatively pleads lack of proximate cause between any act or negligence of the defendant or any of them, or any unseaworthy condition aboard the *F/V Travis and Natalie* and the alleged injuries claimed by the plaintiff.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

### THIRD DEFENSE

Defendant affirmatively pleads that if the injuries alleged were sustained, the plaintiff has not provided documentary medical proof of said injuries, that said injuries where incurred in the service of the vessel, or that the plaintiff's alleged medical treatment was not reimbursed or reimbursable, and that medical treatment was other than palliative.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

### FOURTH DEFENSE

Defendant avers accord and satisfaction for all maintenance and cure properly submitted by the plaintiff.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

-3-

## FIFTH DEFENSE

If injuries occurred to plaintiff they did not arise while plaintiff was in service of the vessel.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

## SIXTH DEFENSE

Defendant affirmatively pleads the defense of laches to plaintiff's claims.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

## SEVENTH DEFENSE

Plaintiff failed to timely report any injury to the captain before leaving the vessel.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

## EIGHTH DEFENSE

Defendant affirmatively pleads that if the injuries alleged were sustained, they did not occur while plaintiff was in the service of the vessel.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

## NINTH DEFENSE

The plaintiff failed to observe and employ a safe, alternative practice, thus, contributing to his own injury - if any.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

## TENTH DEFENSE

Defendant affirmatively pleads that if the plaintiff was injured as alleged, which is specifically denied, after such injury occurred, the plaintiff had been found fit for duty or service onboard the defendant's vessel, and the defendant owes no further duty or maintenance in cure to the plaintiff.

-4-

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

### ELEVENTH DEFENSE

Defendant affirmatively pleads that plaintiff has failed to produce evidence of actual expenditures equivalent to room and board on the subject vessel, if any.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

### TWELFTH DEFENSE

Defendant affirmatively pleads the plaintiff's wilful refusal to provide documentary evidence of his injury or treatment, failed to report or describe his preexisting conditions, failed to submit to examination or scrutiny of his medical claims for which he claims "cure", and non-cooperation in the description, reporting or submission of his claim.

WHEREFORE, defendant demands judgment against plaintiff, attorney's fees and costs for the defense of this claim for relief.

Defendant demands a trial by jury.

DEFENDANTS,
By their Attorney,

J. Renn Olenn, Esq.  #642090
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

### CERTIFICATION

I certify that I sent a true copy of the within on December 23, 2004   to:

David B. Kaplan, Esq.
THE KAPLAN / BOND GROUP
88 Black Falcon Avenue, Suite 301
Boston, MA 02210

-5-

# Exhibit B

May 24, 2005                                    Frederick Joseph Mattera

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MICHAEL B. HANDRIGAN            :
                                :
VS.                             :C.A. NO. 04-12491 NMG
                                :
TRAVIS & NATALIE, INC.          :


          DEPOSITION OF FREDERICK JOSEPH MATTERA, a
   witness in the above-entitled cause, taken on
   behalf of the Plaintiff, before Nicole Reis, RPR,
   Commissioner and Certified Court Reporter in and
   for the State of Rhode Island, at the Office of
   Olenn & Penza, LLP, 530 Greenwich Avenue, Warwick,
   Rhode Island on May 24, 2005 at 2:00 P.M.


PRESENT:
FOR THE PLAINTIFF  . .  THE KAPLAN/BOND GROUP
                   BY:  DAVID KAPLAN, ESQUIRE

FOR THE DEFENDANT  . .  OLENN & PENZA, LLP
                   BY:  J. RENN OLENN, ESQUIRE



          ALLIED COURT REPORTERS, INC.
             115 PHENIX AVENUE
            CRANSTON, RI 02920
               (401) 946-5500
          www.alliedcourtreporters.com

Page 24

1   Q.   New York?

2        A.   Yes.

3   Q.   New Jersey?

4        A.   Yes.

5   Q.   Cape?  Maine?

6        A.   Yes.

7   Q.   So, your involvement with employment is not

8        limited to Rhode Island, it is also involved with

9        other jurisdictions where you sometimes have to

10       get crew members?

11              MR. OLENN:  I'll object to the form of

12       that question.  Your question, you're leading

13       question was a hypothetical.  "Would he do that

14       hiring"?  You're now suggesting that since he

15       would, that means his involvement in doing so.

16              MR. KAPLAN:  Let's ask him.

17  Q.   Do you hire men from Massachusetts?

18       A.   Yes.

19  Q.   You have no restriction from hiring a person from

20       Massachusetts, do you?

21       A.   No.

22  Q.   And if I'm correct, you have, indeed, hired men

23       from Massachusetts?

24              MR. OLENN:  What period of time are we

25       talking, like, forever?

Page 25

1           MR. KAPLAN:  No, not talking forever.

2    Q.   Within the past five years?

3         A.   Yes.

4    Q.   Now, in addition to hiring people from

5         Massachusetts, do you purchase any supplies from

6         any vendor in Massachusetts?

7         A.   Yes.

8    Q.   Can you tell me who you worked with in purchasing

9         supplies?

10        A.   NAT Builders.

11   Q.   Who else?

12        A.   Reidar's, Levin.

13   Q.   Where are they located?

14        A.   Fairhaven.

15   Q.   Is that somewhat regular, tearing up nets and

16        things, for the kind of fishing that you do?

17        A.   No.

18   Q.   What kind of fishing do you do?

19        A.   Trawling, using nets.

20   Q.   And in trawling, using nets, are you suggesting

21        that there is no damage to these nets?

22        A.   No.

23   Q.   There is damage?

24        A.   Yes.

25   Q.   When a net is damaged, you seek either to repair

Page 26

1    it or replace it, don't you?

2        A.   Repair, yes.

3    Q.   Yes what?

4        A.   Yes, both.  Yes to both.

5    Q.   And the people you've just mentioned are involved

6        in that kind of a business?

7                MR. OLENN:  Excuse me.  Object to form.

8        What people were you talking about?

9                MR. KAPLAN:  He named two, and I can't

10       remember them.

11               MR. OLENN:  Reidar and Levin.

12   Q.   Reidar and Levin, do they do that kind of

13       business?

14       A.   Yes.

15   Q.   Located in Fairhaven?

16       A.   Yes.

17   Q.   And do you do business with them?

18       A.   Yes.

19   Q.   What does a net cost when you buy a new one?

20       A.   They range from three to $12,000.

21   Q.   Do you have any idea, at this time, as to how

22       often you have to incur that expense from

23       Massachusetts vendors?

24       A.   It's random.

25   Q.   Would you agree with me that it's a substantial

Page 27

1      piece of money; that nets are very expensive?

2      A.  No, relative.

3   Q.  Three to $12,000 is not expensive?

4      A.  Yes.

5   Q.  I think I gave you a double negative.  Do you

6      consider the cost of three to $12,000 a

7      substantial expense?

8           MR. OLENN:  Object to the form.

9      Substantial, it's an expense, that's a percentage

10      of --

11           MR. KAPLAN:  I'll withdraw the

12      substantial, and give you an expense.

13      A.  Yes.

14   Q.  What else do you buy from Massachusetts vendors

15      besides nets?

16      A.  Fuel.

17   Q.  How much do you buy?

18      A.  I'd say 8,000, say anywhere from five to

19      10,000 gallons.

20   Q.  How often?

21      A.  Once or twice during a year.

22   Q.  How much would that --

23      A.  Sometimes none at all.

24   Q.  How much would that amount to, approximately?

25      A.  Anywhere from three to, you know, $10,000.

May 24, 2005                                          Frederick Joseph Mattera

Page 28

1    Q.   What else do you -- Mr. Mattera, you're a very

2         sophisticated person.

3              MR. OLENN:   This is not a question.

4    Q.   I'm trying to establish, what else do you do in

5         Massachusetts relating to your business

6         enterprise, other than selling?  I'll get to

7         selling, later.

8         A.   I buy ice, also.

9    Q.   Give me some idea of what your cost of ice is?

10        A.   The most money I've spent probably in the

11        last five years for one year was $5,000.

12   Q.   What about repairs, do you do any repairs in

13        Massachusetts?

14        A.   No.

15   Q.   Let me ask you, what else can you think of that

16        you do?  Do you grub, do you do anything of that

17        nature?

18        A.   No.

19   Q.   Is there anything else you can think of that you

20        do, any other expense you incur in Massachusetts

21        for the operation of your vessel?

22        A.   No.

23   Q.   Okay.  Then let's get to sales of product.  You do

24        sell your product in Massachusetts, don't you?

25        A.   Yes.

Page 29

1    Q.   Is that on a regular basis?

2         A.   No.

3    Q.   Well, you've reviewed your profit and loss

4         statements for the past few years, haven't you?

5         A.   Yes.

6    Q.   Working backwards, that is for the year 2004, what

7         do you say your gross income was?

8         A.   $963,800.

9    Q.   I'm sorry?

10        A.   I'm sorry. $963,800.

11             MR. OLENN:  Excuse me.  May I?  Do we

12        have an agreement that these documents, the profit

13        and loss statements that are in your hands are

14        going to remain confidential?

15             MR. KAPLAN:  I'll give them back to you

16        after this is done.

17             MR. OLENN:  It's on the record.

18             MR. KAPLAN:  If you're asking if I'm

19        going to go to somebody else with it, the answer

20        is no.

21             MR. OLENN:  The answer is it will remain

22        confidential?

23             MR. KAPLAN:  Yes.

24             THE WITNESS:  Thank you.

25             MR. KAPLAN:  I'm no IRS guy, you know.

Page 30

1      Let's go back on.

2    Q.   What percentage of that figure was sold in

3         Massachusetts?

4         A.   Twenty-three percent.

5    Q.   So, is it fair for me to conclude that 23 percent

6         of your gross sales for the year '04 was in

7         Massachusetts?

8         A.   Yes.

9    Q.   Would you consider that somewhat substantial?

10                  MR. OLENN:  Objection.

11                  MR. KAPLAN:  Good question.  Don't you

12        consider that --

13                  MR. OLENN:  23 percent is 23 percent.

14   Q.   Focusing your attention on January to December,

15        '03, that's the year prior, I'm sure you've

16        reviewed your records.  What was your gross income

17        for that year?

18        A.   $773,400.

19   Q.   Now, reviewing the list of buyers, what percentage

20        of the purchases were in Massachusetts?

21                  MR. OLENN:  Purchases or sales?

22                  MR. KAPLAN:  Pardon?

23                  MR. OLENN:  What are you talking about,

24        purchases or sales?

25                  MR. KAPLAN:  Same thing, sales.  Sales is

May 24, 2005                                                    Frederick Joseph Mattera

Page 31

1      okay.

2         A.   Fifty-seven percent.

3    Q.   And what will be the number, how much in dollars?

4         A.   $440,000.

5    Q.   Referring now to the year, '02, was the only

6         Massachusetts purchaser Whaling City?

7         A.   No.

8    Q.   Who else?

9         A.   Base, North Wind, and Whaling City.

10   Q.   What percentage of your grows sales was sold in

11        Massachusetts?

12        A.   Approximately 23 percent.

13   Q.   And what do you say is the dollar value?

14        A.   Approximately, $180,000.

15             MR. KAPLAN:  I don't think I had this one

16        marked yet.  This is Exhibit 2, please.

17             (PLAINTIFF'S EXHIBIT 2 MARKED FOR ID)

18   Q.   Now, Mr. Mattera, are you involved in the

19        ownership, or have an interest in any other vessel

20        other than the TRAVIS & NATALIE?

21        A.   No.

22   Q.   Does your brother own a vessel of his own?

23        A.   No.

24   Q.   Is he involved in the TRAVIS & NATALIE?

25        A.   Yes.

Page 32

1    Q.    Does the business that you conduct require or have

2          any advertising?

3          A.    No.

4    Q.    How do you contact your buyers?

5          A.    Verbal.  Verbal agreements/verbal contact.

6    Q.    For example, Whaling City, you've been conducting

7          business with them for a substantial period of

8          time?

9          A.    Yes.

10   Q.    And for substantial number of dollars?

11         A.    Yes.

12   Q.    How do you communicate with them?

13         A.    Via phone, E-mail.

14   Q.    Do you use the mails in any way?  Do you send

15         bills or anything of that nature?

16         A.    No.

17   Q.    And is it paid to you by check?

18         A.    Yes.

19   Q.    On a Massachusetts bank?

20         A.    Yes.

21   Q.    All of the business you conduct with your

22         Massachusetts buyers, you're paid through

23         Massachusetts banks?

24         A.    Yes.

25   Q.    Do you register to do business in Massachusetts?

Page 34

1        state permits, of which I have.

2    Q.   You have federal permits, which permits you to

3         fish where?

4             THE WITNESS:   In federal waters, outside

5         of the boundary zone out to 200 miles?

6             MR. KAPLAN:   Right.

7    A.   The EEZ, Exclusive Economic Zone.

8    Q.   Do you have state permits?

9    A.   Yes.

10   Q.   What does that entitle you?  Where do they come

11        from, first of all?

12   A.   Massachusetts, Rhode Island, New York, New

13        Jersey.

14   Q.   So these state permits you have to pay for, don't

15        you?

16   A.   Yes.

17   Q.   What permits do you have from Massachusetts that

18        you paid for?

19   A.   Fishing, lobster, and they're like a

20        supplement permit for two species of fish being

21        summer flounder and scup.

22   Q.   And do you have to pay any money for that?

23   A.   Yes.

24   Q.   What do you pay?  Does the pay depend on the

25        catch, the amount of the catch, or flat fee?

Page 45

1    complaint.  They are, for the Plaintiff, Michael
2    B. Handrigan.  You know Mr. Handrigan, do you not?
3    A.  Yes.
4 Q. Do you know where this Plaintiff lives?
5    A.  Yes.
6 Q. Do you know where this Plaintiff works?
7         THE WITNESS:  Presently?
8         MR. OLENN:  Yes.
9    A.  No.
10 Q. Did Mr. Handrigan work for you during the calendar
11    year 2004?
12    A.  Yes.
13 Q. Did he work for you before 2004?
14    A.  No.  Not to my knowledge.
15 Q. So to the best of your recollection, the
16    Plaintiff, Michael B. Handrigan, worked for Travis
17    & Natalie, Inc. during only the calendar year
18    2004, correct?
19    A.  Yes.
20 Q. Now, what town or county does Michael B. Handrigan
21    live in?
22    A.  Narragansett.
23 Q. Is that in Rhode Island?
24    A.  Yes.
25 Q. And what town or county do the officers of Travis

May 24, 2005                                    Frederick Joseph Mattera

Page 46

1      & Natalie, Inc. live in?

2      A.   Richmond.

3   Q.   Rhode Island?

4      A.   Yes.

5   Q.   How far are those two towns from each other?

6      A.   Approximately 15 miles.

7   Q.   How far is Richmond, Rhode Island from downtown

8      Providence, approximately?

9      A.   Twenty-five miles.

10  Q.   What's the driving time to downtown Providence

11      from your -- from the home of the officers of

12      Travis & Natalie, Inc.

13      A.   Thirty minutes.

14  Q.   And are you familiar with the driving time from

15      Narragansett, Rhode Island to downtown Providence?

16      A.   Yes.

17  Q.   How long is that?

18      A.   Forty minutes.

19  Q.   How far is it, approximately?

20      A.   I'd say 30/32 miles.

21  Q.   Are you aware of whether it is at least twice as

22      far to Boston, Massachusetts from both Richmond

23      and Narragansett than it is from Providence?

24      A.   Oh, yes.

25                MR. KAPLAN:   I'm going to object to this

Page 47

1       entire line of questioning.  I don't see any

2       relevance to it.  If you wish to pursue it, it's

3       okay.

4    Q.  Is it more convenient for you, Mr. Mattera, as an

5       officer of TRAVIS & NATALIE to travel to

6       Providence or Boston to have your case heard?

7       A.  Providence.

8    Q.  Who were the members of your crew in 2004 who may

9       have known of Mr. Handrigan, either because they

10      served with him or may simply know of him from

11      being in the fishing community?

12      A.  Peter Tucco and Ed Coughlin.

13   Q.  So they may be potential witnesses in the case?

14      A.  Yes.

15   Q.  Where do they live, sir?

16      A.  Jamestown.

17   Q.  Is that in Rhode Island?

18      A.  Yes.  Narragansett.

19   Q.  Also in Rhode Island?

20      A.  Yes.

21   Q.  Now, approximately how many different crewmen

22      worked for Travis & Natalie, Inc. aboard the

23      fishing vessel, F/V TRAVIS & NATALIE during the

24      calendar year 2004?

25      A.  Approximately 16/17 crewmen.

# Exhibit C

# Select A Case

**This person is a party in 10 cases.**

| | | |
|---|---|---|
| 1:98-cv-10736-NG | McNulty v. Huntress, Inc. | filed 04/28/98 |
| 1:98-cv-10737-NG | McNulty v. Huntress Inc. | filed 04/28/98 |
| 1:98-cv-11921-RGS | Faherty v. Benthos Seafood, In | filed 09/18/98 |
| 1:99-cv-12443-RCL | Reynolds v. Nordic Fisheries,Inc | filed 11/29/99 |
| 1:00-cv-10059-PBS | Kezirian v. The Penn Mutual Life | filed 01/06/00 |
| 1:02-cv-10830-REK | Del Prete, et al v. United States, et al | filed 05/08/02 |
| 1:02-cv-10922-WGY | Lewis v. CPR Fishing, Inc. | filed 05/20/02 |
| 1:03-cv-12448-REK | Weckesser v. F/V Katrina Lee et al | filed 12/04/03 |
| 1:04-cv-12059-JLT | Dacosta v. CPR Fishing, Inc. | filed 09/24/04 |
| 1:04-cv-12491-NMG | Handrigan v. Travis & Natalie, Inc. | filed 11/24/04 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/15/2005 08:45:21 | | | |
| **PACER Login:** | kb0100 | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | Last Name: olenn First Name: j. Middle Name: renn Type: aty |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

# Exhibit D

JRO:MKD:ljc 37168 \pleading\37168Affidavit

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL B. HANDRIGAN                      :
                                          :
                VS.                       :          C.A. NO. 04-12491 NMG
                                          :
TRAVIS & NATALIE, INC.,                   :
Owner of F/V TRAVIS & NATALIE             :

### AFFIDAVIT

I, Frederick J. Mattera, of 113 Lewiston Avenue, West Kingston, Rhode Island  02892, hereby make affidavit as follows under the pains and penalties of perjury:

1.  I am the owner of Travis & Natalie, Inc., which owns the F/V Travis & Natalie.

2.  The home port of the F/V Travis & Natalie is the port of Galilee in Narragansett, Rhode Island.

3.  To the best of my knowledge, all crewmen that worked on the F/V Travis & Natalie, at the time the plaintiff worked aboard the vessel, were residents of southern Rhode Island.

FREDERICK J. MATTERA

Subscribed and sworn to me this 25th day of January, 2005.

Notary Public  Michael T. Peen

My commission expires:  6/2/06

# Exhibit E





**Start:**    Narragansett, RI US

**End:**    Fairhaven, MA US

| **Directions** | **Distance** |
|---|---|
| **1:** Start out going NORTH on BOSTON NECK RD/RI-1A toward OLD BOSTON NECK RD. | 6.0 miles |
| **2:** Merge onto RI-138 E via the ramp on the LEFT toward JAMESTOWN/NEWPORT (Portions toll). | 6.9 miles |
| **3:** Take the RI-138 E ramp toward RI-114 N/FALL RIVER/CAPE COD. | 0.7 miles |
| **4:** Take the RI-138 N ramp toward RI-114/FALL RIVER/CAPE COD. | <0.1 miles |
| **5:** Turn LEFT onto RI-138 E/ADMIRAL KALBFUS RD. | 0.6 miles |
| **6:** Turn LEFT onto RI-138/W MAIN RD. Continue to follow W MAIN RD. | 6.6 miles |
| **7:** Stay STRAIGHT to go onto RI-114/W MAIN RD. Continue to follow RI-114 N. | 0.5 miles |
| **8:** Merge onto RI-24 N toward I-195/FALL RIVER/PROVIDENCE. | 9.4 miles |
| **9:** Merge onto I-195 E via EXIT 3 toward BOSTON/CAPE COD. | 11.2 miles |
| **10:** Merge onto MA-18 S via EXIT 15 toward DOWNTOWN. | 0.9 miles |
| **11:** Take the US-6 E exit toward FAIRHAVEN. | 0.2 miles |
| **12:** Turn SLIGHT LEFT onto US-6 E. | 0.9 miles |



**13:** Turn RIGHT onto MAIN ST.                    0.3 miles

**14:** Turn LEFT onto SPRING ST.                   <0.1 miles

**15:** Turn RIGHT onto WILLIAM ST.                 <0.1 miles

**16:** End at Fairhaven, MA US

**Total Est. Time: 1 hour, 13 minutes**     **Total Est. Distance: 45.02 miles**



**Start:**
Narragansett, RI US

**End:**
Fairhaven, MA US





# Exhibit F



**Start:** Narragansett, RI US

**End:** **1 Courthouse Way**
Boston, MA 02210-3002, US



**DVD Rentals Delivered**

Only $9.99 a month

No late fees

40,000+ titles

Click Here

| **Directions** | **Distance** |
|---|---|
| **1:** Start out going NORTHEAST on BOSTON NECK RD/RI-1A toward OLD BOSTON NECK RD. | 0.4 miles |
| **2:** Turn SLIGHT LEFT onto OLD BOSTON NECK RD. | 0.2 miles |
| **3:** Turn LEFT onto MIDDLEBRIDGE RD. | 1.0 miles |
| **4:** Turn LEFT onto TORREY RD. | 0.5 miles |
| **5:** Turn RIGHT onto TOWER HILL RD/US-1 N. | 5.1 miles |
| **6:** Take RI-4 N. | 9.9 miles |
| **7:** RI-4 N becomes I-95 N. | 44.3 miles |
| **8:** Merge onto I-93 N/US-1 N via EXIT 12 toward BOSTON. | 15.3 miles |
| **9:** Take EXIT 20 toward I-90/LOGAN AIRPORT/WORCESTER/S. STATION. | 0.4 miles |
| **10:** Take the I-90 E exit on the LEFT toward LOGAN AIRPORT/SOUTH BOSTON. | 1.0 miles |
| **11:** Keep RIGHT at the fork in the ramp. | 0.1 miles |
| **12:** Keep LEFT at the fork in the ramp. | <0.1 miles |

**13:** Stay STRAIGHT to go onto E SERVICE RD.    0.1 miles

**14:** E SERVICE RD becomes NORTHERN AVE.    0.2 miles

**15:** End at **1 Courthouse Way**
Boston, MA 02210-3002, US

**Total Est. Time: 1 hour, 33 minutes**    **Total Est. Distance: 79.22 miles**



**Start:**
Narragansett, RI US

**End:**
**1 Courthouse Way**
Boston, MA 02210-3002, US



