UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
MICHAEL B. HANDRIGAN,     )
         Plaintiff,     )
)
v.             )     CIVIL ACTION NO. 04-12491-NMG
)
TRAVIS & NATALIE, INC.     )
Owner of F/V TRAVIS &     )
& NATALIE,     )
         Defendants.     )
_____)

## PLAINTIFF'S RULE 59(e) MOTION FOR RECONSIDERATION

The plaintiff, pursuant to Fed.R.Civ.P. 59(e), moves this court to reconsider its July 7, 2005 Order allowing the transfer of this case pursuant to 28 U.S.C. § 1404(a) to USDC District of Rhode Island. *See* Memorandum & Order attached as Exhibit A.

The plaintiff states that such an "extraordinary remedy" may be granted on the grounds that such relief "is necessary to correct *manifest errors of law or fact upon which the judgment is based*." *See* Baicker-McKee, et. al., Federal Civil Rules Handbook, Authors' Commentary on Rule 59(e) (West 2005) (citing to McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (emphasis in the original).

In support of this motion, the plaintiff ascribes the reasons set forth below:

### THE U.S. SUPREME COURT HAS STATED THAT *FORUM NON CONVENIENS*, 28 U.S.C. § 1404(a), IS INAPPLICABLE IN FELA (HENCE JONES ACT) CASES.

The U.S. Supreme Court has stated that "in cases under the FELA . . . plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens*." *See* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 505 (1947) attached as Exhibit B; *see also* Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 53, 54 (1941) attached as Exhibit C. ("privilege of venue . . . cannot be frustrated for reasons of convenience or expense.")  The Jones Act expressly incorporates the FELA.  *See* 46 U.S.C. § 688(a).

For these reasons *inter alia*, this court's ruling is contrary to controlling U.S. Supreme Court precedent.  The plaintiff's choice of venue and forum in a Jones Act case *are* "unimpeachable," "inviolable" and 28 U.S.C. § 1404(a) is inapplicable.  As such, plaintiff requests this court to reconsider its Order dated July 7, 2005 and DENY Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,
by his attorney,


/s/ David B. Kaplan_____
DAVID B. KAPLAN, ESQUIRE
BBO # 258540
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080


Dated:  July 15, 2005

# Exhibit A

**United States District Court**
**District of Massachusetts**

```
                                    )
MICHAEL B. HANDIGRAN,               )
                                    )
        Plaintiff,                  )
                                    )   Civil Action No.
        v.                          )   04-12491-NMG
                                    )
TRAVIS & NATALIE, INC.,             )
                                    )
        Defendant.                  )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In the instant admiralty dispute, plaintiff, Michael B.
Handigran ("Handigran") seeks damages for injuries suffered while
aboard the F/V Travis & Natalie, a vessel owned by defendant,
Travis & Natalie, Inc. ("Travis"). On February 1, 2005, Travis
filed a motion to transfer venue to the District of Rhode Island
pursuant to 28 U.S.C. § 1404(a). On May 5, 2005, a scheduling
conference was held and the parties briefly addressed the matter
orally. Plaintiff requested limited discovery before filing a
written opposition and the Court granted him leave to take a
three-hour deposition of the vessel's owner. Both parties
subsequently filed memoranda in support of their positions.

Defendant argues that a transfer is appropriate pursuant to
28 U.S.C. § 1404(a) because the vessel, the witnesses and the
parties all reside in Rhode Island. It also appears that Rhode

-1-

Island law will be applicable in this case.  Finally, other than

the fact that the defendant conducts business in Massachusetts,

the Commonwealth has no interest in adjudicating this dispute.

Plaintiff responds that under <u>Pure Oil Company</u> v. <u>Suarez</u>,

384 U.S. 202 (1966) the plaintiff "is <u>immune</u> to the constriction

of venue that § 1440(a) [sic] would place upon him" (emphasis in

original).[1]  He thus concludes that defendant's motion should be

denied because "this court not only has personal jurisdiction

over the defendant, but this venue and forum are proper".  In

other words, his argument appears to be that, under <u>Pure Oil</u>,

transfer of venue under § 1404(a) is unavailable in Jones Act

cases and, as a result, plaintiff's choice of venue, as long as

jurisdiction is proper, is unimpeachable.

Plaintiff has conflated several legal rules.  The Supreme

Court in <u>Pure Oil</u> held that, under the Jones Act, venue is <u>proper</u>

in any district where the defendant does business.  <u>Pure Oil</u>, 384

U.S. at 205.  As a result, more than one venue will often be

proper.  <u>Pure Oil</u> did not, however, suggest that, in choosing

among proper alternatives, plaintiff's choice is inviolable.  In

reality, no such rule exists and Jones Act cases are routinely

transferred under § 1404(a).  <u>E.g.</u> <u>Robertson</u> v. <u>M/V Cape Hunter</u>,

979 F.Supp. 1105 (S.D.Tex. 1997)(transfer from Texas to

---

[1]It is presumed that plaintiff's citations to 28 U.S.C. §
1440(a) (which does not exist) were intended as citations to §
1404(a).

Louisiana); <u>Biggers</u> v. <u>Borden, Inc.</u>, 475 F.Supp. 333 (E.D.Pa. 1979)(transfer from Pennsylvania to New Jersey); <u>Bishop</u> v. <u>Ashland Oil, Inc.</u>, 394 F.Supp. 203 (W.D.Pa. 1975)(transfer from Pennsylvania to Kentucky).

In this case, it is undisputed that venue would be proper in either Massachusetts or Rhode Island but that does not end the inquiry. Considerations of convenience and efficiency weigh decisively in favor of transfer. As stated above, the parties, vessel and witnesses all reside in Rhode Island and the plaintiff admits that all depositions and discovery will take place there. Because the accident occurred in Rhode Island, the law of that state will likely apply. Finally, because this dispute is between Rhode Island residents, its courts have a far greater interest in adjudicating the dispute than does this Court. Plaintiff offers no reason why Massachusetts is a more convenient or preferable forum. Accordingly, this case will be transferred to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).

**ORDER**

In accordance with the foregoing, defendant's motion to transfer (Docket No. 5) is **ALLOWED**. The Clerk of the Court shall transfer this case to the United States District Court for the District of Rhode Island. Plaintiff has requested oral argument but, under the circumstances, that request is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated July 7, 2005

-4-

# Exhibit B

330 U.S. 501, *; 67 S. Ct. 839, **;
91 L. Ed. 1055, ***; 1947 U.S. LEXIS 2551

LEXSEE 330 US 501

**GULF OIL CORP. v. GILBERT, DOING BUSINESS AS GILBERT STORAGE & TRANSFER CO.**

**No. 93**

**SUPREME COURT OF THE UNITED STATES**

*330 U.S. 501; 67 S. Ct. 839; 91 L. Ed. 1055; 1947 U.S. LEXIS 2551*

**December 18, 19, 1946, Argued**
**March 10, 1947, Decided**

**PRIOR HISTORY:**

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND COURT.

Applying the doctrine of forum non conveniens, a district court dismissed a tort action in New York arising out of events occurring in Virginia. *62 F.Supp. 291.* The Circuit Court of Appeals reversed. *153 F.2d 883.* This Court granted certiorari. *328 U.S. 830.* Reversed, p. 512.

**DISPOSITION:**

*153 F.2d 883,* reversed.

**LexisNexis(R) Headnotes**

**SYLLABUS:**

1. A federal district court has power to dismiss an action at law pursuant to the doctrine of *forum non conveniens* -- at least where its jurisdiction is based on diversity of citizenship and the state courts have such power. Pp. 502-509, 512.

2. A resident of Virginia brought an action in a federal district court in New York City against a Pennsylvania corporation qualified to do business in both Virginia and New York (where it had designated agents to receive service of process), to recover damages for destruction of plaintiff's public warehouse and its contents in Virginia by fire resulting from defendant's negligence. The court had jurisdiction (based solely on diversity of citizenship) and the venue was correct; but all events in litigation had taken place in Virginia, most of the witnesses resided there, and both state and federal courts in Virginia were available to plaintiff and were able to obtain jurisdiction of defendant. Applying the doctrine of *forum non conveniens*, the court dismissed the suit. *Held*: It did not abuse its discretion in doing so. Pp. 509-512.

3. Important considerations in the application of the doctrine of *forum non conveniens*, from the standpoint of litigants, are relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of view of the premises if that be appropriate, and all other practical problems that make trial of a case easy, expeditious and inexpensive. P. 508.

4. Considerations of public interest in applying the doctrine include the undesirability of piling up litigation in congested centers, the burden of jury duty on people of a community having no relation to the litigation, the local interest in having localized controversies decided at home and the unnecessary injection of problems in conflict of laws. Pp. 508-509.

**COUNSEL:**

Archie D. Gray and Bernard A. Golding argued the cause for petitioner. With them on the brief were John E. Green, Jr. and Matthew S. Gibson.

Max J. Gwertzman argued the cause and filed a brief for respondent.

**JUDGES:**

Vinson, Black, Reed, Frankfurter, Douglas, Murphy, Jackson, Rutledge, Burton

**OPINIONBY:**

330 U.S. 501, *; 67 S. Ct. 839, **;
91 L. Ed. 1055, ***; 1947 U.S. LEXIS 2551

JACKSON

**OPINION:**

[*502]    [**840]    [***1059]    MR. JUSTICE JACKSON delivered the opinion of the Court.

The questions are whether the United States District Court has inherent power to dismiss a suit pursuant to the doctrine of *forum non conveniens* and, if so, whether that power was abused in this case.

The respondent-plaintiff brought this action in the Southern District of New York, but resides at Lynchburg, Virginia, where he operated a public warehouse. He alleges that the petitioner-defendant, in violation of the ordinances of Lynchburg, so carelessly handled a delivery of gasoline to his warehouse tanks and pumps as to cause [*503] an explosion and fire which consumed the warehouse building to his damage of $ 41,889.10, destroyed merchandise and fixtures to his damage of $ 3,602.40, caused injury to his business and profits of $ 20,038.27, and burned the property of customers in his custody under warehousing agreements to the extent of $ 300,000. He asks judgment of $ 365,529.77 with costs and disbursements, and interest from the date of the fire. The action clearly is one in tort.

The petitioner-defendant is a corporation organized under the laws of Pennsylvania, qualified to do business in both Virginia and New York, and it has designated officials of each state as agents to receive service of process. When sued in New York, the defendant, invoking the doctrine of *forum non conveniens*, claimed that the appropriate place for trial is Virginia, where the plaintiff lives and defendant does business, where all events in litigation took place, where most of the witnesses reside, and where both state and federal courts are available to [***1060] plaintiff and are able to obtain jurisdiction of the defendant.

The case, on its merits, involves no federal question and was brought in the United States District Court solely because of diversity in citizenship of the parties. Because of the character of its jurisdiction and the holdings of and under *Erie Railroad Co.* v. *Tompkins, 304 U.S. 64,* the District Court considered that the law of New York as to *forum non conveniens* applied and that it required the case to be left to Virginia courts. n1 It therefore dismissed.

n1 *Gilbert v. Gulf Oil Corp., 62 F.Supp. 291.*

The Circuit Court of Appeals disagreed as to the applicability of New York law, took a restrictive view of the application of the entire doctrine in federal courts

and, one judge dissenting, reversed. n2 The case is here on certiorari. *328 U.S. 830.*

n2 *Gilbert v. Gulf Oil Corp., 153 F.2d 883.*

[*504] I.

[***HR1] It is conceded that the venue statutes of the United States permitted the [**841] plaintiff to commence his action in the Southern District of New York and empower that court to entertain it. n3 But that does not settle the question whether it must do so. Indeed, the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction or mistake of venue.

n3 See *28 U. S. C. § 112; Neirbo Co.* v. *Bethlehem Shipbuilding Corp., Ltd., 308 U.S. 165.*

This Court, in one form of words or another, has repeatedly recognized the existence of the power to decline jurisdiction in exceptional circumstances. As formulated by Mr. Justice Brandeis, the rule is:

"Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal." *Canada Malting Co., Ltd., v. Paterson Steamships, Ltd., 285 U.S. 413, 422-23.*

We later expressly said that a state court "may in appropriate cases apply the doctrine of *forum non conveniens." Broderick v. Rosner, 294 U.S. 629, 643; Williams v. North Carolina, 317 U.S. 287, 294, n. 5.* Even where federal rights binding on state courts under the Constitution are sought to be adjudged, this Court has sustained state courts in a refusal to entertain a litigation between a nonresident and a foreign corporation or between two foreign corporations. *Douglas v. New York, N. H. & H. R. R., 279 U.S. 377; Anglo-American Provision Co.* v. [*505] *Davis Provision Co. No. 1, 191 U.S. 373.* It has held the use of an inappropriate forum in one case an unconstitutional burden on interstate commerce. *Davis v. Farmers Co-operative Equity Co., 262 U.S. 312.* On substantially *forum non conveniens* grounds we have required federal courts to relinquish

decision of cases within their jurisdiction where the court would have to participate in the administrative policy of a state. *Railroad Commission v. Rowan & Nichols Oil Co., 311 U.S. 570; Burford v. Sun Oil Co., 319 U.S. 315;* but *cf. Meredith v. Winter Haven, 320 U.S. 228.* And most [***1061] recently we decided *Williams v. Green Bay & Western R. R. Co., 326 U.S. 549,* in which the Court, without questioning the validity of the doctrine, held it had been applied in that case without justification. n4

n4 The doctrine did not originate in federal but in state courts. This Court in recognizing and approving it by name has never indicated that it was rejecting application of the doctrine to law actions which had been an integral and necessary part of evolution of the doctrine. And *cf. Slater v. Mexican National R. R., 194 U.S. 120.* Wherever it is applied in courts of other jurisdictions, its application does not depend on whether the action is at law, *Collard v. Beach, 93 App. Div. 339, 87 N. Y. S. 884; Murnan v. Wabash R. Co., 246 N. Y. 244, 158 N. E. 508; Jackson & Sons v. Lumbermen's Mutual Casualty Co., 86 N. H. 341, 168 A. 895;* or in equity, *Langfelder v. Universal Laboratories, 293 N. Y. 200, 56 N. E. 2d 550; Egbert v. Short, [1907] 2 Ch. 205.* See footnote 1, *Koster* v. (*American*) *Lumbermens Mutual Casualty Co.*, decided this day, *post,* p. 518.

It is true that in cases under the Federal Employers' Liability Act we have held that plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens*. But this was because the special venue act under which those cases are brought was believed to require it. *Baltimore & Ohio R. R.* v. *Kepner, 314 U.S. 44; Miles v. Illinois Central R. R., 315 U.S. 698.* [**842] Those decisions do not purport to modify the doctrine as to other cases governed by the general venue statutes.

[*506] But the court below says that "The Kepner case . . . warned against refusal of jurisdiction in a particular case controlled by congressional act; here the only difference is that congressional act, plus judicial interpretation (under the Neirbo case), spells out the result." *153 F.2d at 885.* The Federal Employers' Liability Act, however, which controlled decision in the *Kepner* case, specifically provides where venue may be had in any suit on a cause of action arising under that statute. What the court below refers to as "congressional act, plus judicial interpretation," is the general statute of venue in diversity suits, plus our decision that it gives the defendant "a personal privilege respecting the venue, or

place of suit, which he may assert, or may waive, at his election," *Neirbo Co.* v. *Bethlehem Shipbuilding Corp., 308 U.S. 165, 168.* The Federal Employers' Liability Act, as interpreted by *Kepner*, increases the number of places where the defendant may be sued and makes him accept the plaintiff's choice. The *Neirbo* case is only a declaration that if the defendant, by filing consent to be sued, waives its privilege to be sued at its place of residence, it may be sued in the federal courts at the place where it has consented to be sued. But the general venue statute plus the *Neirbo* interpretation do not add up to a declaration that the court must respect the choice of the plaintiff, no matter what the type of suit or issues involved. The two taken together mean only that the defendant may consent to be sued, and it is proper for the federal court to take jurisdiction, not that the plaintiff's choice cannot be questioned. The defendant's consent to be sued extends only to give the court jurisdiction of the person; it assumes that the court, having the parties before it, will apply all the applicable law, including, in those cases where it is appropriate, its discretionary judgment as to whether the suit should be entertained. In all cases in which the doctrine of *forum non conveniens* comes into [*507] play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.

[***1062] II.

[***HR2] The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. n5 The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it. n6

330 U.S. 501, *; 67 S. Ct. 839, **;
91 L. Ed. 1055, ***; 1947 U.S. LEXIS 2551

n5 See Foster, *Place of Trial -- Interstate Application of Intrastate Methods of Adjustment*, *44 Harv. L. Rev. 41, 47, 62.*

n6 See *Logan v. Bank of Scotland, [1906] 1 K. B. 141; cf. La Societe du Gaz de Paris* v. *La Societe Anonyme de Navigation "Les Armateurs Francais,"* [1926] Sess. Cas. (H. L.) 13. *Collard v. Beach, 93 App. Div. 339, 87 N. Y. S. 884; Jackson & Sons v. Lumbermen's Mutual Casualty Co., 86 N. H. 341, 168 A. 895;* see *Pietraroia v. New Jersey & Hudson R. R. Co., 197 N. Y. 434, 91 N. E. 120; Great Western Railway Co.* v. *Miller, 19 Mich. 305.*

[*508] [**843] Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses. n7

n7 See Dainow, *The Inappropriate Forum*, *29 Ill. L. Rev. 867, 889.*

[***HR3] [***HR4] If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. n8 But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

n8 See Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, *29 Col. L. Rev. 1.*

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community [*509] which has no relation to the litigation. In cases which touch the affairs of many persons, there is [***1063] reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

The law of New York as to the discretion of a court to apply the doctrine of *forum non conveniens*, and as to the standards that guide discretion is, so far as here involved, the same as the federal rule. *Murnan v. Wabash R. Co., 246 N. Y. 244, 158 N. E. 508; Wedemann v. United States Trust Co., 258 N. Y. 315, 179 N. E. 712;* see *Gregonis v. Philadelphia and Reading Co., 235 N. Y. 152, 139 N. E. 223.* It would not be profitable, therefore, to pursue inquiry as to the source from which our rule must flow.

III.

[***HR5] Turning to the question whether this is one of those rather rare cases where the doctrine should be applied, we look first to the interests of the litigants.

The plaintiff himself is not a resident of New York, nor did any event connected with the case take place there, nor does any witness, with the possible exception of experts, live there. No one connected with that side of the case save counsel for the plaintiff resides there, and he has candidly told us that he was retained by insurance companies interested presumably because of subrogation. His affidavits and argument are devoted to controverting claims as to defendant's inconvenience rather than to showing that the present forum serves any convenience [*510] of his own, with one exception. The only justification for trial in New York advanced here is one rejected by the district court and is set forth in the brief as follows:

"This Court can readily realize that an action of this type, involving as it does a claim for damages in an amount close to $ 400,000, [**844] is one which may stagger the imagination of a local jury which is surely unaccustomed to dealing with amounts of such a nature. Furthermore, removed from Lynchburg, the respondent will have an opportunity to try this case free from local influences and preconceived notions which may make it

difficult to procure a jury which has no previous knowledge of any of the facts herein."

This unproven premise that jurors of New York live on terms of intimacy with $ 400,000 transactions is not an assumption we easily make. Nor can we assume that a jury from Lynchburg and vicinity would be "staggered" by contemplating the value of a warehouse building that stood in their region, or of merchandise and fixtures such as were used there, nor are they likely to be staggered by the value of chattels which the people of that neighborhood put in storage. It is a strange argument on behalf of a Virginia plaintiff that the community which gave him patronage to make his business valuable is not capable of furnishing jurors who know the value of the goods they store, the building they are stored in, or the business their patronage creates. And there is no specification of any local influence, other than accurate knowledge of local conditions, that would make a fair trial improbable. The net of this is that we cannot say the District Court was bound to entertain a provincial fear of the provincialism of a Virginia jury. That leaves the Virginia plaintiff without even a suggested reason for transporting this suit to New York.

[*511] Defendant points out that not only the plaintiff, but every person [***1064] who participated in the acts charged to be negligent, resides in or near Lynchburg. It also claims a need to interplead an alleged independent contractor which made the delivery of the gasoline and which is a Virginia corporation domiciled in Lynchburg, that it cannot interplead in New York. There also are approximately 350 persons residing in and around Lynchburg who stored with plaintiff the goods for the damage to which he seeks to recover. The extent to which they have left the community since the fire and the number of them who will actually be needed is in dispute. The complaint alleges that defendant's conduct violated Lynchburg ordinances. Conditions are said to require proof by firemen and by many others. The learned and experienced trial judge was not unaware that litigants generally manage to try their cases with fewer witnesses than they predict in such motions as this. But he was justified in concluding that this trial is likely to be long and to involve calling many witnesses, and that Lynchburg, some 400 miles from New York, is the source of all proofs for either side, with possible exception of experts. Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants. Nor is it necessarily cured by the statement of plaintiff's counsel that he will see to getting many of the witnesses to the trial and that some of them "would be delighted to come to New York to testify." There may be circumstances where such a proposal should be given weight. In others, the offer may not turn out to be as generous as defendant or court might suppose it to be. Such matters are for the District Court to decide in exercise of a sound discretion.

The court likewise could well have concluded that the task of the trial court would be simplified by trial in Virginia. [*512] If trial was in a state court, it could apply its own law to events occurring there. If in federal court by reason of diversity of citizenship, the court would apply the law of its own state in which it is likely to be experienced. The course of adjudication in New York federal court might be beset with conflict of laws problems all avoided if the case is litigated in Virginia where it arose.

We are convinced that the District Court did not exceed its powers or the bounds of its discretion in dismissing plaintiff's complaint and remitting him to the courts of his own community. The Circuit Court of Appeals took too restrictive a [**845] view of the doctrine as approved by this Court. Its judgment is

*Reversed.*

MR. JUSTICE REED and MR. JUSTICE BURTON dissent. They do not set out the factual reasons for their dissent since the Court's affirmance of *Koster* v. *Lumbermens Mutual Casualty Co.*, decided today, *post*, p. 518, would control.


**DISSENTBY:**

BLACK


**DISSENT:**

MR. JUSTICE BLACK, dissenting.

The defendant corporation is organized under the laws of Pennsylvania, but is qualified to do business and maintains an office in New York. Plaintiff is an individual residing and doing business in Virginia. The accident in which plaintiff alleges to have been damaged occurred in Lynchburg, Virginia. Plaintiff brought this action in the Federal District Court in New York. Section 11 of the Judiciary Act of 1789, 1 Stat. 78, carried over into the Judicial Code, § 24, *28 U. S. C. § 41* (1), confers jurisdiction upon federal district courts of all actions at law between citizens of different states. The Court does not suggest that the federal district court in New York lacks jurisdiction under this statute or that the venue was improper in this case. *28 U. S. C. § 112.* [***1065] *Cf. Neirbo Co.* v. [*513] *Bethlehem Corp., 308 U.S. 165.* But it holds that a district court may abdicate its jurisdiction when a defendant shows to the satisfaction of a district court that it would be more convenient and less vexatious for the defendant if the

330 U.S. 501, *; 67 S. Ct. 839, **;
91 L. Ed. 1055, ***; 1947 U.S. LEXIS 2551

trial were held in another jurisdiction. Neither the venue statute nor the statute which has governed jurisdiction since 1789 contains any indication or implication that a federal district court, once satisfied that jurisdiction and venue requirements have been met, may decline to exercise its jurisdiction. Except in relation to the exercise of the extraordinary admiralty and equity powers of district courts, this Court has never before held contrary to the general principle that "the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Hyde v. Stone, 20 How. 170, 175,* quoted with approval in *Chicot County v. Sherwood, 148 U.S. 529, 534.* See also *Dennick v. Railroad Co., 103 U.S. 11; Baltimore & O. R. Co. v. Kepner, 314 U.S. 44; Evey v. Mexican C. R. Co., 81 F. 294.* n1 Never until today has this Court held, in actions for money damages for violations of common law or statutory rights, that a district court can abdicate its statutory duty to exercise its jurisdiction for the alleged convenience of the defendant to a lawsuit. Compare *Slater v. Mexican National R. Co., 194 U.S. 120.*

n1 In *Mondou v. New York, N. H. & H. R. Co., 223 U.S. 1, 58,* it was stated that: "The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication." *Cf. Douglas v. New York, N. H. & H. R. Co., 279 U.S. 377, 388.*

For reasons peculiar to the special problems of admiralty and to the extraordinary remedies of equity, the courts exercising admiralty and equity powers have been permitted [*514] at times to decline to exercise their jurisdiction. *Canada Malting Co. v. Paterson S. S. Co., 285 U.S. 413; Rogers v. Guaranty Trust Co., 288 U.S. 123; cf. Williams v. Green Bay & W. R. Co., 326 U.S. 549.* This exception is rooted in the kind of relief which these courts grant and the kinds of problems which they solve. See *Meredith v. Winter Haven, 320 U.S. 228, 235; Burford v. Sun Oil Co., 319 U.S. 315, 333 n. 29.* Courts of equity developed to afford relief where [**846] a money judgment in the common law courts provided no adequate remedy for an injured person. n2 From the beginning of equitable jurisdiction up to now, the chancery courts have generally granted or withheld their special remedies at their discretion; and "courts of admiralty . . . act upon enlarged principles of equity." *O'Brien v. Miller, 168 U.S. 287, 297.* But this Court has, on many occasions, severely restricted the discretion of [***1066] district courts to decline to grant even the

extraordinary equitable remedies. *Meredith v. Winter Haven, supra,* and cases there cited at 234, 235. Previously federal courts have not generally been allowed the broad and indefinite discretion to dispose even of equity cases solely on a trial court's judgment of the relative convenience of the forum for the parties themselves. For a major factor in these equity decisions has been the relative ability of the forum to shape and execute its equitable remedy. *Cf. Rogers v. Guaranty Trust Co., supra.*

n2 Although the distinction between actions at law and suits in equity in federal courts has been abolished by the adoption of the single form of civil action, *Rule 2, F. R. C. P.,* see 1 Moore, Federal Practice (1938) c. 2, there remains to federal courts the same discretion, no more and no less, in the exercise of special equitable remedies as existed before the adoption of the federal rules. Neither the rules, the statutes, tradition, nor practical considerations justify application of equitable discretion to actions for money judgments based on common law or statutory rights.

[*515]    No such discretionary authority to decline to decide a case, however, has, before today, been vested in federal courts in actions for money judgments deriving from statutes or the common law. n3 To engraft the doctrine of *forum non conveniens* upon the statutes fixing jurisdiction and proper venue in the district courts in such actions, seems to me to be far more than the mere filling in of the interstices of those statutes. n4

n3 This Court, whose jurisdiction is primarily appellate, has held that it need not exercise its constitutionally granted original jurisdiction even at common law where there is another suitable forum. *Georgia v. Pennsylvania R. Co., 324 U.S. 439, 464-65.* But the Constitution, not Congress, fixes this Court's jurisdiction. And it was this Court's duty to interpret its constitutional jurisdiction. It is the duty of Congress to fix the jurisdiction of the district courts by statute. It did so. It is not the duty of this Court to amend that statute.

n4 "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." Holmes, J., dissenting in *Southern Pacific Co. v. Jensen, 244 U.S. 205, 218, 221.* See also dissenting opinion, *State Tax*

330 U.S. 501, *; 67 S. Ct. 839, **;
91 L. Ed. 1055, ***; 1947 U.S. LEXIS 2551

*Commission v. Aldrich, 316 U.S. 174, 185, 202, n. 23* and authorities there collected.

It may be that a statute should be passed authorizing the federal district courts to decline to try so-called common law cases according to the convenience of the parties. But whether there should be such a statute, and determination of its scope and the safeguards which should surround it, are, in my judgment, questions of policy which Congress should decide. There are strong arguments presented by the Court in its opinion why federal courts exercising their common law jurisdiction should have the discretionary powers which equity courts have always possessed in dispensing equitable relief. I think equally strong arguments could be advanced to show that they should not. For any individual or corporate defendant who does part of his business in states other than the one in which he [*516] is sued will almost invariably be put to some inconvenience to defend himself. It will be a poorly represented multistate defendant who cannot produce substantial evidence and good reasons fitting the rule now adopted by this Court tending to establish that the forum of the action against him is most inconvenient. The Court's new rule will thus clutter the very threshold of the federal courts with a preliminary trial of fact concerning [**847] the relative convenience of forums. The preliminary disposition of this factual question will, I believe, produce the very kind of uncertainty, confusion, and hardship which stalled and handicapped persons seeking compensation for maritime injuries following this Court's decision in *Southern Pacific Co.* v. *Jensen, 244 U.S. 205.* The broad and indefinite discretion left to federal courts to decide the question of convenience from the welter of factors which are relevant to such a judgment, [***1067] will inevitably produce a complex of close and indistinguishable decisions from which accurate prediction of the proper forum will become difficult, if not impossible. Yet plaintiffs will be asked "to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere." *Davis v. Dept. of Labor & Industries, 317 U.S. 249, 254.*

This very case illustrates the hazards of delay. It must be begun anew in another forum after the District Court, the Circuit Court of Appeals, and now this Court, have had their time-consuming say as to the relative convenience of the forum in which the plaintiff chose to seek redress. Whether the statute of limitations has run [*517] against the plaintiff, we do not know. The convenience which the individual defendant will enjoy from the Court's new rule of *forum non conveniens* in law actions may be thought to justify its inherent delays, uncertainties, administrative complications and hardships. But in any event, Congress has not yet said so; and I do not think that this Court should, 150 years after the passage of the Judiciary Act, fill in what it thinks is a deficiency in the deliberate policy which Congress adopted. n5 Whether the doctrine of *forum non conveniens* is good or bad, I should wait for Congress to adopt it.

n5 The very law review articles which are relied upon to document this theory of a federal rule of *forum non conveniens* reveal that judicial adoption of this theory without a new act of Congress would be an unwarranted judicial innovation. Foster, *Place of Trial -- Interstate Application of Intrastate Methods of Adjustment*, 44 Harv. L. Rev. 41, 52; Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Col. L. Rev. 1, 18. For instance, it is stated that "No matter how little dispute there is as to the desirability of such legislation, there is comparatively little chance of overcoming legislative inertia and securing its passage unless some accident happens to focus attention upon it. The best hope is that the courts will feel free to take appropriate action without specific legislation authorizing them to do so." Foster, *supra* at 52.

MR. JUSTICE RUTLEDGE joins in this opinion.

**REFERENCES:** Return To Full Text Opinion

# Exhibit C

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

LEXSEE 314 U.S. 44

**BALTIMORE & OHIO RAILROAD CO. v. KEPNER**

**No. 20**

**SUPREME COURT OF THE UNITED STATES**

*314 U.S. 44; 62 S. Ct. 6; 86 L. Ed. 28; 1941 U.S. LEXIS 108; 136 A.L.R. 1222*

**Reargued October 20, 1941
November 10, 1941, Decided**

**SUBSEQUENT HISTORY:**

Reargued October 20, 1941.

**PRIOR HISTORY:**

CERTIORARI TO THE SUPREME COURT OF OHIO.

*CERTIORARI, 312 U.S. 671,* to review a decree affirming the dismissal on demurrer of a bill by the railroad company to enjoin Kepner from further prosecution of a suit in the federal court for the Eastern District of New York seeking recovery of damages under the Federal Employers Liability Act for injuries resulting from an accident in Ohio. The judgment was affirmed here by an equally divided court, *313 U.S. 542;* subsequently, a petition for rehearing was granted, the judgment was vacated, and the case was restored to the docket for reargument, *313 U.S. 597.*

**DISPOSITION:**

*137 Ohio St. 409; 30 N. E. 2d 982,* affirmed.

**LexisNexis(R) Headnotes**

**SYLLABUS:**

1. Under § 6 of the Federal Employers Liability Act, as amended, the injured employee has the federal privilege of bringing his action in any district in which the railroad is doing business, though the district chosen be far from the district in which he resides, or in which the cause of action arose, and in another State. P. 52.

2. A state court may not validly exercise its equitable jurisdiction to enjoin a resident of the State from prosecuting a cause of action arising under the Federal Employers Liability Act in a federal court of another State where the Act gave venue, on the ground that the prosecution in that district is inequitable, vexatious and harassing to the carrier. P. 53.

**COUNSEL:**

Messrs. Harry H. Byrer and Morison R. Waite, with whom Messrs. Cassius M. Clay and William A. Eggers were on the brief, for petitioner.

Courts of equity have inherent power to restrain the prosecution of vexatious and harassing litigation, and it is the law of Ohio that its citizens are subject to the exercise of such power by its courts. Pomeroy's Equity Jurisprudence, 3rd Ed., Vol. 4, § 1360; Vol. 6, § 670; *Snook v. Snetzer, 25 Ohio St. 516; New York, C. & St. L. R. Co. v. Matzinger, 136 Ohio St. 271; Cole v. Cunningham, 133 U.S. 107; Dehon v. Foster, 4 Allen 545* (Mass.); *Steelman v. All Continent Corp., 301 U.S. 278, 291; Boston & M. R. Co. v. Whitehead, 29 N. E. 2d 916,* and cases cited.

The Federal Employers' Liability Act does not forbid, either expressly or by implication, this exercise of power by the courts, nor does it so completely cover the field as to preclude the application of state law. *Douglas v. N. Y., N. H. & H. R. Co., 279 U.S. 377; Maurer v. Hamilton, 309 U.S. 598; Reid v. Colorado, 187 U.S. 137, 148; Federal Trade Commission v. Bunte Bros., 312 U.S. 349; United States v. Darby, 312 U.S. 100; Hines v. Davidowitz, 312 U.S. 52; Kelly v. Washington, 302 U.S. 1; Michigan Central R. Co. v. Mix, 278 U.S. 492.*

The history of the amendment to § 6 of the Federal Employers' Liability Act demonstrates that Congress did not intend to bar this equitable power, and that the exercise of such power would be in harmony with the purpose of the Act. *Palmer v. Webster & Atlas Bank, 312 U.S. 156;* Thornton's Federal Employers' Liability

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

Act, 3rd Ed., Appendix B, pp. 576, 580; Cong. Rec., Vol. 45, Pt. 4, p. 4040.

The restraint of a party to a suit is not tantamount to the restraint of the court itself. *Steelman v. All Continent Corp., 301 U.S. 278, 290; Bryant v. Atlantic Coast Line R. Co., 92 F.2d 569.*

The facts in the present case are sufficient to invoke the equitable powers of a court. *Baltimore & Ohio R. Co. v. Kepner, 137 Ohio St. 409; Davis v. Farmers' Cooperative Co., 262 U.S. 312; Michigan Central R. Co. v. Mix, 278 U.S. 492; Denver & R. G. W. R. Co. v. Terte, 284 U.S. 284; New York, C. & St. L. R. Co. v. Matzinger, 136 Ohio St. 271; Erie R. Co. v. Tompkins, 304 U.S. 64.*

The weight of authority supports the right to injunction. *Reed's Administratrix v. Illinois Central R. Co., 182 Ky. 455; Ex Parte Crandall, 53 F.2d 969,* cert. den., *285 U.S. 540; Bryant v. Atlantic Coast Line R. Co., 92 F.2d 569.*

Whether the conduct of an Ohio citizen is equitable is a question of state law, which an Ohio court having jurisdiction of the citizen is to determine in accordance with that law, unless Congress within its delegated powers has made an enactment inconsistent with the *Ohio law. Milliken v. Meyer, 311 U.S. 457.*

Mr. Samuel T. Gaines, with whom Mr. Edward M. Ballard was on the brief, for respondent.

The Federal Employers' Liability Act drew to itself the right of action for injuries or death of an employee within its purview. The action must be brought as prescribed in the Act. *Moore v. C. & O. Ry. Co., 291 U.S. 205; Breisch v. Central Railroad, 312 U.S. 484; Seaboard Air Line Ry. Co. v. Kenney, 240 U.S. 489.*

The right of respondent to sue in the federal District Court in the district where petitioner is doing business is clear and unqualified, and compels such court to assume jurisdiction. *Moore v. C. & O. Ry. Co., supra; Southern Ry. v. Cochran, 56 F.2d 1019; Rader v. B. & O. R. Co., 108 F.2d 980; Chicago, M. & St. P. Ry. Co. v. Schendel, 292 F. 326; Atchison, T. & S. F. Ry. Co. v. Sowers, 213 U.S. 55.*

Nothing in either the language or the history of § 6 of the Federal Employers' Liability Act sustains the contention that the right to invoke a federal court's jurisdiction therein provided is subject to the equity powers of a state court.

The language is clear, and its obvious meaning controls. *Railroad Commission v. Chicago, B. & Q. R. Co., 257 U.S. 563, 588, 589; Kuehner v. Irving Trust Co., 299 U.S. 445, 449.*

The Ohio court had no jurisdiction of the subject of the action after District Court jurisdiction attached.

The grant of concurrent jurisdiction gives plaintiff a choice of the court. As an incident he is entitled to whatever remedial advantage inheres in the particular forum. *Minneapolis & St. Louis R. Co. v. Bombolis, 241 U.S. 211; Missouri v. Taylor, 266 U.S. 200.*

A state court is without power to arrest jurisdiction of the federal court. *Sharon v. Terry, 36 F. 337, 355; Wallace v. McConnell, 13 Pet. 138, 151; Terral v. Burke Construction Co., 257 U.S. 532; Pennsylvania Casualty Co. v. Pennsylvania, 294 U.S. 189, 197; Riggs v. Johnson County, 6 Wall. 166.*

**JUDGES:**

Stone, Roberts, Black, Reed, Frankfurter, Douglas, Murphy, Byrnes, Jackson

**OPINIONBY:**

REED

**OPINION:**

[*47]    [**7]    [***30]    MR. JUSTICE REED delivered the opinion of the Court.

[***HR1]    We have for decision in this case the question whether a state court may validly exercise its equitable jurisdiction to enjoin a resident of the state from prosecuting a cause of action arising under the Federal Employers' Liability Act in a federal court of another state where that Act gave venue, on the ground that the prosecution in the federal court is inequitable, vexatious and harassing to the carrier.

As the issue was deemed a federal question of substance, n1 undecided by this Court, and concerning which there was lack of uniformity in the state court decisions, n2 certiorari was granted, *312 U.S. 671,* the decree below affirmed here by an equally divided court, *313 U.S. 542,* and the petition for rehearing allowed, *313 U.S. 597.*

n1 Judicial Code, § 237b.

n2 *McConnell v. Thomson, 213 Ind. 16, 8 N. E. 2d 986, 11 N. E. 2d 183; Reed's Admrx.* v. *Illinois Central R. Co., 182 Ky. 455, 206 S. W. 794.*

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

[*48] This proceeding originally was brought by the petitioner, an interstate railroad, in the Court of Common Pleas of Hamilton County, Ohio, against the respondent Kepner, an injured resident employee, to enjoin his continued prosecution of a suit in the United States District Court for the Eastern District of New York under the Federal Employers' Liability Act for his injuries. The accident, according to the petition, occurred in Butler County, Ohio, a county adjacent to that of respondent's residence, through both of which counties petitioner's railroad ran. The petition further showed that suitable courts, state and federal, were constantly open and that petitioner and the witnesses were available for process therein. It was stated the federal court chosen was seven hundred miles from the residence of the respondent and numerous witnesses; that to present the case properly required the personal attendance of approximately twenty-five locally available witnesses -- the crew, inspectors and the medical attendants -- at a cost estimated to exceed the cost of the presentation of the case at a convenient point by $ 4,000, with no resulting benefit to the injured employee. Petitioner asserted these facts established that the continued prosecution of the federal court action would be an undue burden on interstate [**8] commerce and an unreasonable, improper and inequitable burden upon petitioner itself.

[***31] The defendant railroad was doing business in the New York district where the damage suit was filed, as appears from a copy of the complaint in the federal case made a part of the petition.

Respondent demurred for failure to state a cause of action and lack of jurisdiction of the subject of the action. The trial court sustained the demurrer and dismissed the action, by an order which was sustained by the Court of Appeals and, on rehearing, by the Supreme [*49] Court of Ohio. n3 The basis for the decision below was that the respondent employee was privileged to enjoy, without interference from a state court, the venue allowed by the Federal Employers' Liability Act. n4

n3 *137 Ohio St. 206, 28 N. E. 2d 586* and *137 Ohio St. 409, 30 N. E. 2d 982.*

n4 *137 Ohio St. 409, 416, 30 N. E. 2d 982.*

The statutory provision in regard to venue is in § 6, which so far as pertinent reads as follows:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." (Apr.

5, 1910, c. 143, § 1, 36 Stat. 291, as amended March 3, 1911, c. 231, § 291, 36 Stat. 1167; *45 U. S. C. § 56.*

When the second Employers' Liability Act was enacted, venue of actions under it was left to the general venue statute, 35 Stat. 65, which fixed the venue of suits in the United States courts, based in whole or in part upon the Act, in districts of which the defendant was an inhabitant. n5 Litigation promptly disclosed what Congress considered deficiencies in such a limitation of the right of railroad employees to bring personal injury actions, n6 with the result that the present language was added. n7

n5 First section of the act of March 3, 1875, 18 Stat. 470, as amended by the act of March 3, 1887, 24 Stat. 552, and act of August 13, 1888, 25 Stat. 433.

n6 *Cound v. Atchison, T. & S. F. Ry. Co., 173 F. 527; Macon Grocery Co.* v. *Atlantic Coast Line R. Co., 215 U.S. 501, 506.* Senate Report No. 432, 61st Cong., 2d Sess., p. 4.

n7 April 5, 1910, c. 143, 36 Stat. 291.

The reason for the addition was said to be the injustice to an injured employee of compelling him to go to the possibly far distant place of habitation of the defendant [*50] carrier, with consequent increased expense for the transportation and maintenance of witnesses, lawyers and parties, away from their homes. n8 The legislative history throws little light on the reason for the choice of the three standards for determining venue: the residence of the carrier, the place where it is doing business, or the place where the cause of action arose. At one time, the amendatory bill fixed venue as "the district of the residence of either the plaintiff or the defendant, or in which the cause of action arose, or in which the defendant shall be found at the time of commencing such action." n9 Fears were expressed that so wide a choice might result in injustice to the carrier, p. 2257. No doubt this language was actually considered by the Senate Judiciary Committee, as well as the language of the general venue statute for which the Committee was providing an exception. Specific attention was called in the Senate report to the *Macon Grocery* case, interpreting the general venue statute. That statute placed venue in the residence of either party, where the jurisdiction was founded on diversity of citizenship alone. The language finally adopted must have been deliberately chosen to enable the plaintiff, in the words of Senator Borah, who submitted the report on the bill, "to find the corporation at [***32] any point or

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." n10

n8 Senate Report No. 432, 61st Cong., 2d Sess., p. 4.

n9 Cong. Rec., 61st Cong., 2d Sess., Vol. 45, Pt. 3, p. 2253.

n10 *Id.*, Pt. 4, p. 4034.

[***HR2] When petitioner sought an injunction in the Ohio court against the further prosecution of the federal court action in [**9] New York, the petition alleged that prosecution of the New York action would entail "an undue burden" on interstate commerce. No objection to the decree below, upon that explicit ground, appears in the petition for [*51] certiorari, either in the specification of errors or reasons for granting the writ. In petitioner's brief on the merits, it is pointed out that this Court held in *Denver & R. G. W. R. Co.* v. *Terte, 284 U.S. 284,* that the disadvantages of litigation far from the scene of the accident are not substantial enough to justify a state court in forbidding the continuation of the litigation in a district where the lines of the carrier run. This accords with *Hoffman v. Missouri ex rel. Foraker, 274 U.S. 21,* where it was said the carrier must "submit, if there is jurisdiction, to the requirements of orderly, effective administration of justice, although thereby interstate commerce is incidentally burdened." n11 Since the carrier's exhibit of respondent's New York petition shows an allegation that it is doing business in New York, we assume that business to be such as is contemplated by the venue provisions of § 6. There is therefore no occasion to consider further the suggestion that the suit in New York creates an inadmissible burden upon interstate commerce.

n11 Cf. *International Milling Co.* v. *Columbia Co., 292 U.S. 511, 517-21; St. Louis, B. & M. Ry. Co.* v. *Taylor, 266 U.S. 200, 207. Davis v. Farmers Co-operative Co., 262 U.S. 312,* is limited to its particular facts, *292 U.S. 511 at 517; Michigan Central R. Co.* v. *Mix, 278 U.S. 492,* and *Atchison, T. & S. F. Ry. Co.* v. *Wells, 265 U.S. 101,* turn on the absence or inconsequential character of business done within the states where the railroads were sued. The *Mix* case is differentiated from the *Foraker* and *Taylor* cases because the carrier's lines or contracts did not run or call for performance in the territory over which the court where the objectionable action was filed had jurisdiction.

[***HR3] The real contention of petitioner is that, despite the admitted venue, respondent is acting in a vexatious and inequitable manner in maintaining the federal court suit in a distant jurisdiction when a convenient and suitable forum is at respondent's doorstep. Under such circumstances, petitioner asserts power, abstractly speaking, in the Ohio court to prevent a resident under its jurisdiction [*52] from doing inequity. Such power does exist. n12 In the *Matzinger* case, the Supreme Court of Ohio exercised this power to prevent the continuation of a personal injury suit in Illinois, by a resident under its jurisdiction, on an Ohio cause of action. Such power has occasionally been exercised by one state over its citizens, seeking to enforce in other states remedies under the Employers' Liability Act, against defendants locally available for the litigation. n13 At times the injunction has been refused. n14

n12 *New York, C. & St. L. R. Co.* v. *Matzinger, 136 Ohio St. 271, 25 N. E. 2d 349; Cole v. Cunningham, 133 U.S. 107; Simon v. Southern Ry. Co., 236 U.S. 115, 123.*

n13 *Kern v. Cleveland, C., C. & St. L. Ry. Co., 204 Ind. 595, 185 N. E. 446; Reed's Admrx.* v. *Illinois Central R. Co., 182 Ky. 455, 206 S. W. 794; Ex parte Crandall, 53 F.2d 969.*

n14 *Missouri-Kansas-Texas R. Co.* v. *Ball, 126 Kan. 745, 271 P. 313; Mobile & Ohio R. Co.* v. *Parrent, 260 Ill. App. 284; Lancaster v. Dunn, 153 La. 15, 95 So. 385.*

[***HR4] We read the opinion of the Supreme Court of Ohio to express the [***33] view that, if it were not for § 6 of the Employers' Liability Act, the requested injunction would be granted, on the undisputed facts of the petition. Section 6 establishes venue for an action in the federal courts. As such venue is a privilege created by federal statute n15 and claimed by respondent, the Supreme Court of Ohio felt constrained by the Supremacy Clause to treat § 6 as decisive of the issue. It is clear that the allowance or denial of this federal privilege is a matter of federal law, not a matter of state law under *Erie Railroad* [**10] *Co.* v. *Tompkins, 304 U.S. 64, 72.* n16 Its correct decision depends upon a construction of a federal act. n17 Consequently, the action of a state court must be in accord with the federal statute [*53] and the federal rule as to its application, rather than state statute, rule or policy. n18

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

n15 *Neirbo* Co. v. *Bethlehem Corp., 308 U.S. 165.*

n16 A contrary view as to injunctions against actions in state courts has been expressed. Roberts: Federal Liabilities of Carriers (2d Ed.) Vol. 2, § 962.

n17 *Cohens v. Virginia, 6 Wheat. 264, 379.*

n18 *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co., 182 U.S. 499, 505; Tullock v. Mulvane, 184 U.S. 497, 505, 512-13; Cincinnati, N. O. & T. P. Ry. Co.* v. *Rankin, 241 U.S. 319, 326-27; Chesapeake & Ohio Ry. Co.* v. *Martin, 283 U.S. 209, 213; Chesapeake & Ohio Ry. Co.* v. *Kuhn, 284 U.S. 44, 47; Federal Land Bank v. Priddy, 295 U.S. 229, 231;* cf. Roberts, *op. cit., supra.*

Petitioner presses upon us the argument that the action of Congress gave an injured railway employee the privilege of extended venue, subject to the usual powers of the state to enjoin what in the judgment of the state courts would be considered an improper use of that privilege. This results, says petitioner, because the Act does not in terms exclude this state power. n19 As courts of equity admittedly possessed this power before the enactment of § 6, the argument continues, it is not to be lightly inferred that the venue privilege was in disregard of this policy. But the federal courts have felt they could not interfere with suits in far federal districts where the inequity alleged was based only on inconvenience. n20 There is no occasion to distinguish between the power and the propriety of its exercise in this instance, since the limits of the two are here co-extensive. The privilege was granted because the general venue provisions worked injustices to employees. It is obvious that no state statute could vary the venue; n21 and, we think, equally true that no state court may interfere [*54] with the privilege, for the benefit of the carrier or the national transportation system, on the ground of inequity based on cost, inconvenience or harassment. When the section was enacted it filled the entire field of venue in federal courts. n22 A privilege of venue, granted by the legislative body which created [***34] this right of action, cannot be frustrated for reasons of convenience or expense. If it is deemed unjust, the remedy is legislative -- a course followed in securing the amendment of April 5, 1910, for the benefit of employees. This Court held in *Hoffman v. Missouri ex rel. Foraker, 274 U.S. 21,* that the burden on interstate commerce may be disregarded where the carrier had lines in the distant state. The importance of unhampered commerce is at least as great as that of a carrier's freedom from harassing incidents of

litigation. Whatever burden there is here upon the railroad, because of inconvenience or cost, does not outweigh the plain grant of privilege for suit in New York. n23

n19 *Federal Trade Commission v. Bunte Bros., 312 U.S. 349; United States v. Darby, 312 U.S. 100; Hines v. Davidowitz, 312 U.S. 52; Kelly v. Washington, 302 U.S. 1.*

n20 *Chesapeake & Ohio Ry. Co.* v. *Vigor, 90 F.2d 7; Baltimore & Ohio R. Co.* v. *Clem, 36 F.Supp. 703,* overruling *Baltimore & Ohio R. Co.* v. *Bole, 31 F.Supp. 221.*

n21 It was held in *Chicago, M. & St. P. Ry. Co.* v. *Schendel, 292 F. 326, 327-32,* that by virtue of the Supremacy Clause a state statute was unconstitutional which forbade the doing of any act to further litigation in another state, by testimony or otherwise, on a personal injury claim arising locally.

n22 Cf. *New York Central R. Co.* v. *Winfield, 244 U.S. 147, 151.*

n23 We do not think petitioner's attempted distinction between a prohibited injunction directed at the court and a permitted one directed at the parties is valid. An order to the parties forbidding prosecution would destroy venue effectually. *Oklahoma Packing Co.* v. *Gas Co., 309 U.S. 4, 9.* Cf. *Hill v. Martin, 296 U.S. 393, 403. Steelman v. All Continent Corp., 301 U.S. 278,* relied upon by petitioner, would be pertinent only if there were occasion for the state court to control federal venue. It would then be exercised against the parties.

*Affirmed.*

**DISSENTBY:**

FRANKFURTER

**DISSENT:**

[**11] MR. JUSTICE FRANKFURTER, dissenting:

Disagreement with the views of the majority on the construction of a venue provision does not ordinarily call for expression. But inasmuch as the decision in this

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

case unjustifiably limits long-settled powers of the state courts and thereby brings into disequilibrium the relationship of federal and state courts, I think it proper to express my views.

[*55]   The decision of the Court seems to be epitomized in this sentence: "A privilege of venue, granted by the legislative body which created this right of action, cannot be frustrated for reasons of convenience or expense." As a general proposition, the suggestion that a privilege of venue granted by the legislative body which creates the right of action "cannot be frustrated for reasons of convenience or expense" would be as novel as it is untenable.   To give unique scope to this venue provision different from the significance accorded all other provisions of venue "granted by the legislative body which created" the right is no less novel doctrine. For this departure from the effect customarily given to venue provisions, no warrant is avouched in the specific provisions of the Federal Employers' Liability Act, the general provisions of legislation defining the relationship between federal and state courts,  the principles applied in the decisions of this Court, or settled doctrines of equity jurisdiction.   None is avouched because none is available.

The opinion does not deny the historic power of courts of equity to prevent a misuse of litigation by enjoining resort to vexatious and oppressive foreign suits.  See *e. g., Cole v. Cunningham, 133 U.S. 107, 118-20; Pere Marquette Ry. Co.* v. *Slutz, 268 Mich. 388, 256 N. W. 458; Mason v. Harlow, 84 Kan. 277, 114 P. 218; Wilser v. Wilser, 132 Minn. 167, 156 N. W. 271; Northern Pacific Ry. Co.* v. *Richey & Gilbert Co., 132 Wash. 526, 232 P. 355; O'Haire v. Burns, 45 Colo. 432, 101 P. 755; Miller v. Gittings, 85 Md. 601, 37 A. 372.* Nor does it question the familiar doctrine of *forum non conveniens*, under which a court having statutory jurisdiction may decline its facilities to a suit that in justice should be tried elsewhere.  See *Canada Malting Co.* v. *Paterson Co., 285 U.S. 413, 422-23; Massachusetts v. Missouri, 308 U.S. 1, 19; Rogers v. Guaranty Trust Co., 288 U.S. 123, 130-31.*  These manifestations [***35] of a civilized judicial system are firmly imbedded [*56]  in our law.  See Foster, *Place of Trial in Civil Actions, 43 Harv. L. Rev. 1217;* Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col. L. Rev. 1.*  Nor does the decision give new currency to the discredited notion that there is a general lack of power in the state courts to enjoin proceedings in federal courts.  Cf.  *Princess Lida v. Thompson, 305 U.S. 456, 466;* Warren, *Federal and State Court Interference, 43 Harv. L. Rev. 345.*  Nothing in Article III of the Constitution or in the legislation by which Congress has vested judicial power in the federal courts justifies such a doctrine.

And so the basis of the decision of the Court must be found, if anywhere, in the terms of the venue provision of the Federal Employers' Liability Act.  The section provides, simply, that an action under the Act "may be brought in a District Court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action," that the jurisdiction of the federal courts shall be "concurrent" with that of the state courts, and that no action brought  in a state court of competent jurisdiction shall be removed to a federal court.  36 Stat. 291; *45 U. S. C. § 56.* The phrasing of the section is not unique: it follows the familiar pattern generally employed by Congress in framing venue provisions.  *E. g., 28 U. S. C. §  112* (suits based  [**12]  upon diversity of citizenship); *28 U. S. C. § 53* (suits by or against China Trade Act corporations); *28 U. S. C. § 104* (suits for penalties and forfeitures); *28 U. S. C. § 105* (suits for recovery of taxes); *28 U. S. C. §  41* (26) (b) (interpleader).  The decision cannot rest, therefore, upon any peculiarities of the language of the provision.

Nor can justification for the Court's conclusion be found in the legislative history of the section or the clearly expressed reasons of policy underlying its enactment.  As the House and Senate committee reports show, H. Rept.  [*57]  No. 513, pp. 6-7, S. Rept. No. 432, pp. 3-4, 61st Cong., 2d Sess., Congress was aware of the hardship by which, under the original Employers' Liability Act of April 22, 1908, 35 Stat. 65, the plaintiff could bring his action only at the railroad's "residence."  *Cound v. Atchison, T. & S. F. Ry. Co., 173 F. 527.* The amendment of  1910 greatly enlarged the range of a plaintiff's convenience in bringing suit.  It is not disputed that the amendment was intended to open to a plaintiff courts from which he previously was barred.  But that is not the question before us.  The problem is whether the Act was intended to give a plaintiff an absolute and unqualified right to compel trial of his action in any of the specified places he chooses, thereby not only depriving state courts of their old power to protect against unjustly oppressive foreign suits, but also forbidding federal courts to decline jurisdiction "in the interest of justice" on familiar grounds of *forum non conveniens*.  See *Canada Malting Co.* v. *Paterson Co., 285 U.S. 413, 422-23.* Nothing in the history of the 1910 amendment indicates that its framers contemplated any such vast transformation in the established relationship between federal and state courts and in the duty of the federal courts to decline jurisdiction "in the interest of justice." On the contrary, the expressed considerations of policy underlying the amendment were fundamentally the same as those underlying the equitable power to restrain oppressive suits and the reciprocal  doctrine of *forum non conveniens*: It does not comport with equity

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

and justice to allow a suit to be litigated in a forum where, on the balance, unnecessary hardship and inconvenience would be cast upon one party without any compensatingly fair convenience to the other [***36] party, but where, on the contrary, the suit might more conveniently be litigated in another forum available equally to both parties.

This doctrine of justice applies with especially compelling force where the conveniences to be balanced are not [*58] merely conveniences of conflicting private interests but where there is added the controlling factor of public interest. The so-called "convenience" of a railroad concerns the important national function of which the railroads are the agency. As in other phases of federal railroad regulation, the interests of carriers, employees, and the public must be balanced. Because of the "direct concern of the public" in maintaining an economic and efficient railroad system, a unanimous Court, speaking through Mr. Justice Brandeis, held that a carrier may not be sued by a plaintiff where, under the circumstances of the particular facts, such suit would impose an unfair burden upon railroads and thereby upon the nation. *Davis v. Farmers Co-operative Co., 262 U.S. 312.* The declaration by Congress that a court has jurisdiction and venue is not a command that it must exercise its authority in such a case to the unnecessary injury of a defendant and the public. This doctrine has been consistently followed in a series of unanimous decisions. *Atchison, T. & S. F. Ry. Co.* v. *Wells, 265 U.S. 101; Michigan Central R. Co.* v. *Mix, 278 U.S. 492; Hoffman v. Foraker, 274 U.S. 21; Denver & R. G. W. R. Co.* v. *Terte, 284 U.S. 284.* n1 Of course, Congress, if it chose, [**13] could subject interstate carriers to the jurisdiction of the state courts, even in the situations in which this Court found that assumption of jurisdiction would be an injustice to the public. But Congress has not expressed a different view of the governing public interest -- and these cases stand as unchallenged [*59] authorities that, notwithstanding the provision of the Federal Employers' Liability Act conferring unqualified "concurrent jurisdiction" upon the state courts, a plaintiff may in some circumstances be barred from bringing his suit in one of the places specified by the Act. In this respect, at least, a plaintiff's "privilege of venue, granted by the legislative body which created this right of action," *can* "be frustrated for reasons of convenience or expense."

n1 *International Milling Co.* v. *Columbia Co., 292 U.S. 511,* did not restrict but expressly recognized the doctrine of the *Davis* case. In finding the scope of the *Davis* doctrine in the circumstances which gave rise to it, the opinion in the *Milling Co.* case only followed traditional technique in the use of precedents. It made precisely the same differentiation that Mr. Justice Brandeis, who articulated the doctrine in the *Davis* case, made in applying the principle of the case to subsequent situations. See *St. Louis, B. & M. Ry. Co.* v. *Taylor, 266 U.S. 200,* and *Hoffman v. Foraker, 274 U.S. 21.* The doctrine itself stands unchallenged. The present decision does not challenge it.

The opinion of the Court attaches importance to a phrase taken from Senator Borah's remarks on the floor of the Senate in submitting the bill to amend the Act: "The bill enables the plaintiff to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." 45 Cong. Rec. 4034. The context of this statement is set out in the footnote. n2

n2 "Mr. President, I wish to discuss very briefly the bill. The bill as it is now pending provides for three amendments to the employers' liability law which is now upon the statute books. The first has reference to the venue . . . The objection which has been made to the existing law, and this objection arises by reason of the decision of some of the courts, is that the plaintiff may sometimes be compelled to go a great distance in order to have his cause of action against the defendant by reason of the fact that now the action must be brought in certain instances in the district in which the defendant is an inhabitant. In other words, the corporation being an inhabitant of the State which creates it, it might follow that the plaintiff would have to travel a long distance in order, under certain conditions, to bring his action against the defendant and come within the terms of the law. So, if this bill should be passed the law will be remedied in that respect, in enabling the plaintiff to bring his action where the cause of action arose or where the defendant may be doing business. The bill enables the plaintiff to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." 45 Cong. Rec. 4034.

The intrinsic difficulties of language [***37] and the emergence, after enactment, of situations not anticipated by even the [*60] most gifted legislative imagination reveal the doubts and ambiguities in statutes that so often compel judicial construction. To illumine

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

these dark places in legislative composition all the sources of light must be drawn upon. But the various aids to construction are guides of experience, not technical rules of law. See *Boston Sand Co.* v. *United States, 278 U.S. 41, 48.* One of the sources which may be used for extracting meaning from legislation is the deliberative commentary of the legislators immediately in charge of a measure. Contemporary answers by those authorized to give answers to questions raised about the meaning of pending legislation obviously go a long way to elucidating doubtful legislative purpose. But this rule of good sense does not mean that every loose phrase, even of the proponent of a measure, is to be given the authority of an encyclical. The language of a chairman of a committee, like the language of all people, is merely a symbol of thought. A speaker's casual, isolated general observation should not be tortured into an expression of disregard for an established, far-reaching policy of the law. Especially in the case of Senator Borah, such imputation should not be made. As is well known, he eyed most jealously the absorption of state authority by extension of federal power. It would have been easy to vest the enforcement of the Federal Employers' Liability Act entirely in the federal courts. Instead, not only was concurrent jurisdiction given to the state courts in the enforcement of this federal right, but removal of a state action to the federal courts was prohibited. Instead of being deemed hostile to the purposes of the Federal Employers' Liability Act and not to be entrusted with its administration, the state courts [**14] were accepted as the most active agencies for its enforcement. And yet, although nowhere in the course of the whole legislative history of the Act in question -- the hearings, the reports in both houses, the debates on the floor -- is there the slightest intimation that the problem before us entered the mind of any legislator, [*61] we are asked to attribute to Senator Borah the uprooting of a doctrine which is an old and fruitful part of the fabric of the law of the states as well as the law of the land, by a general observation which has no relation to this doctrine and to which respectful meaning can be given without such distortion.

To read the venue provision of the Act as do the majority of the Court, is to translate the permission given a plaintiff to enter courts previously closed to him into a withdrawal from the state courts of power historically exercised by them, and into an absolute direction to the specified federal and state courts to take jurisdiction. The implications of such a construction extend far beyond the situation we now have here, of an attempt by a state court to enjoin an action brought in a federal court sitting in another state. It seems to be generally held that the grant to the state courts [***38] of jurisdiction concurrent with the federal courts does not deprive one state court of the power to enjoin an oppressive suit

under the Act in a foreign state court. n3 Moreover, this Court has expressly held that the venue provision of the Employers' Liability Act does not prevent a state court from declining jurisdiction as a *forum non conveniens. Douglas* v. *New York, N. H. & H. R. Co., 279 U.S. 377.* To be sure, under the guise of applying local doctrines of equity jurisdiction, a state court cannot defeat the proper assertion of a federal right. [*62] Resort to this Court may always be had to lay bare such an unwarranted frustration. *American Railway Express Co.* v. *Levee, 263 U.S. 19; Davis v. Wechsler, 263 U.S. 22.* But such supervisory power by this Court over the determination of federal rights by state courts does not imply the denial of power in the state courts to make such determinations in the first instance. *Second Employers' Liability Cases, 223 U.S. 1, 56-57; Claflin v. Houseman, 93 U.S. 130, 136-37; Robb v. Connolly, 111 U.S. 624, 637;* cf. Warren, *Federal Criminal Laws and State Courts*, *38 Harv. L. Rev. 545, 596-97.* The long history of leaving the effective enforcement of federal rights to state courts has proceeded on recognition of the power of the state courts to exercise in the first instance their settled doctrines of law and equity. The opinion of the Court ignores these settled principles. In an area demanding the utmost judicial circumspection, dislocating uncertainty is thereby introduced.

n3 See *Reed's Admrx.* v. *Illinois Central R. Co., 182 Ky. 455, 206 S. W. 794; Chicago, M. & St. P. Ry. Co.* v. *McGinley, 175 Wis. 565, 185 N. W. 218; State ex rel. New York, C. & St. L. R. Co.* v. *Nortoni, 331 Mo. 764, 55 S. W. 2d 272; Kern v. Cleveland, C., C. & St. L. R. Co., 204 Ind. 595, 185 N. E. 446,* with which compare *McConnell v. Thomson, 213 Ind. 16, 8 N. E. 2d 986, 11 N. E. 2d 183;* cf. *Ex parte Crandall, 53 F.2d 969.* The lower federal courts have usually declined to enjoin suits under the Act brought in other federal courts. See *Rader v. Baltimore & Ohio R. Co., 108 F.2d 980, 985-86; Chesapeake & Ohio Ry. Co.* v. *Vigor, 90 F.2d 7; Southern Ry. Co.* v. *Cochran, 56 F.2d 1019, 1020.*

If the privilege afforded a plaintiff to bring suit under the Employers' Liability Act in one place rather than in another is to be regarded as an absolute command to the federal courts to take jurisdiction regardless of any considerations of justice and fairness, why is not the same effect to be given the comparable general venue provisions of § 51 of the Judicial Code, *28 U. S. C. § 112?* Nothing in the language or the history of the venue provision of the Act differentiates it from the numerous other venue provisions of the Judicial Code. Is the settled doctrine of *forum non conveniens* to be deemed

314 U.S. 44, *; 62 S. Ct. 6, **;
86 L. Ed. 28, ***; 1941 U.S. LEXIS 108

impliedly repealed by every such venue provision? Surely, it is much more consonant with reason and right to read venue provisions in the familiar context of established law rather than to impute to Congress an unconsidered, profound alteration in the relationship between the federal and the state [*63] courts and in the relations of the federal [**15] courts *inter se*. Cf. *Gay v. Ruff, 292 U.S. 25.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS join in this opinion.

**REFERENCES:**  Return To Full Text Opinion